**UNITED STATES of America**

v.

**Steven JONES, Defendant**

**No. CRIM.04–96–P–H.**

United States District Court, D. Maine.

Jan. 21, 2005.

---

Darcie N. McElwee, Assistant United States Attorney, Portland, ME, for United States of America.

Bruce M. Merrill, Portland, ME, for Steven Jones, Defendant.

## SENTENCING MEMORANDUM

HORNBY, District Judge.

This 49–year–old defendant has no prior criminal history, either convictions or arrests. What he does have is a history of mental illness. In the year 2000 he was involuntarily committed to a mental institution. Although he did not know it, he thereupon became prohibited from possessing firearms. *see* 18 U.S.C. § 922(g)(4). He pleaded Guilty to violating this prohibition (a federal felony) after police discovered in 2003 that he had six weapons at his rural Maine camp.

Under the Guidelines, his Base Offense Level is 14. United States Sentencing Comm'n, *Guidelines Manual,* § 2K2.1(a)(6) (Nov.2004). Because he possessed between three and seven firearms, it is increased two levels. *Id.* § 2K2.1(b)(1)(A). Because he has accepted responsibility, it is decreased three levels. *Id.* §§ 3E1.1(a), (b). His Total Offense Level is therefore 13. His Criminal History is Category I. The Guideline prison range is 12 to 18 months. Because the range is in Zone D of the Guideline sentencing provisions, at least the minimum sentence (12 months) must be spent in prison. *Id.* § 5C1.1(f).

The defendant, the government and Probation all ask me to depart 1 level under the Guidelines to a Zone C sentence, because it affords greater flexibility in the terms of confinement and would not require me to send the defendant back to prison,[1] *see id.* § 5C1.1(d)(2). They base their request upon mental and emotional conditions, *id.* § 5H1.3; diminished ca-

1. He has been under stringent conditions of release since March 15, 2004.

pacity, *id.* § 5K2.13; post-offense rehabilitation, *id.* § 5K2.19; and multiple circumstances, *id.* § 5K2.0. I conclude that none of these factors, alone or in combination, justifies a departure under Guideline analysis.

Guideline 5H1.3 tells me that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted." The defendant argues that "[t]hey may be relevant, however, in extraordinary circumstances, but only where the defendant's condition contributed to the commission of the offense." Defendant's Motion for a Downward Departure ("Def.'s Mot.") at 4–5 (citing a Second Circuit case, *United States v. Reinoso*, 350 F.3d 51 (2d Cir. 2003)). The defendant argues that here his psychosis contributed to the commission of this offense. That argument confuses the circumstances of his arrest (a psychotic episode, with resulting threats to law enforcement and others) with the crime to which he pleaded guilty. *See* Def.'s Mot. at 6. That crime occurred upon his possession of weapons, well before and independent of the psychotic episode that precipitated his arrest. Congress has prohibited people with medical histories like the defendant from having weapons at any time, irrespective of whether they were then psychotic. Indeed, the defendant has stated that he possessed the weapons because he did not know that he was prohibited from doing so, Def.'s Mot. at 2, showing that his ignorance of the law rather than his mental and emotional condition contributed to the commission of the federal crime.

Guideline 5K2.13 tells me that "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." As I have just stated, this defendant's reduced mental capacity did not contribute to his commission of the offense of possessing weapons, although it undoubtedly contributed to the circumstances of his arrest. As a result, Guideline 5K2.13 does not help him.[2]

Guideline 5K2.19 prohibits any departure for post-sentencing rehabilitative efforts. It does not bear one way or the other upon *pre*-sentencing efforts, the issue presented here.[3]

Finally, the parties and Probation rely upon the catchall departure guideline,

---

2. I do not address the applicability of an exception to Guideline 5K2.13, making its departure unavailable where "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved . . . a serious threat of violence."

3. If extraordinary rehabilitation is to be considered, it would be under Guideline 5K2.0(a), which allows departure for circumstances already considered in the Guidelines (here, in the acceptance of responsibility credit) but "present to an exceptional degree." *United States v. Craven*, 239 F.3d 91, 99 (1st Cir.2001). The First Circuit has made clear that such a departure is "hen's-teeth rare" and "to be granted sparingly." *Craven*, 239 F.3d at 99. One factor to be considered is whether the rehabilitation began before the defendant knew he was a target, *see id.* at 100; *see also United States v. Martin*, 363 F.3d 25, 48 (1st Cir.2004), not the case here. As the First Circuit has noted, it is to be expected that a defendant will undertake some rehabilitation after his arrest while awaiting sentencing, if only "to put his best foot forward at sentencing." *United States v. Sklar*, 920 F.2d 107, 116 (1st Cir.1990); *see also Martin*, 363 F.3d at 48. Here, I find that the defendant's rehabilitation does not meet the demanding standard that it be "extraordinary," *see Craven*, 239 F.3d at 99–100. It may be a major accomplishment for the defendant himself, and for his accomplishment I am glad, but it is not outside the heartland for a defendant under supervision to stick to his medications and treatment program.

5K2.0,[4] arguing that even if none of the foregoing is independently enough to depart, together they justify departure. Since I find no basis in any of them for the requested departure, grouping them all together does not achieve any incremental weight.

Therefore, I conclude that a Guidelines-type departure is not appropriate here.

I next determine whether to follow the Guidelines. In *United States v. Booker*, — U.S. —, —, 125 S.Ct. 738, 756–57, — L.Ed.2d —, — (2005), the United States Supreme Court has made them advisory rather than mandatory. For the reasons that follow, I conclude that I should not follow the Guidelines. Instead, I will impose a sentence that achieves the result sought by the parties' and Probation's request for a departure to a Zone C sentence.

This defendant has a documented and undisputed history of mental illness. He gets into trouble when he stops taking his medications. The occasion of his arrest on this offense was a paranoid episode in which he claimed that people were out to get him and that he would kill them first. On that day, at his camp, guns were observed laid out pointed in several different directions. He was observed behaving strangely on his ATV with a weapon, and he made threats of killing people. Later he barricaded himself in the back of his pickup truck when law enforcement arrived, and threatened to shoot them (although he could not reach his gun, which was in the cab of the pickup). He had not been taking his medications and he was consuming alcohol.

The defendant has served over 7 months in prison, from the time of his arrest August 8, 2003, until his pre-trial release March 15, 2004. Since his release, intensive efforts have been undertaken to implement a treatment plan and provide social services so that he can function productively and so that the community can be protected. This has been accomplished. For over 10 months, the defendant has assiduously complied with every condition imposed upon him and, in particular, has diligently taken his medications. He now has an intensive case manager employed by the Bureau of Developmental Services. He has monthly appointments with the case manager. He has a substance abuse and mental health treatment provider at Oxford County Mental Health, Rumford. He meets him weekly. This provider in turns consults with a psychiatrist to review the medications. The defendant now receives Social Security disability benefits, which help pay for his medications. The defendant lives with his sister and her husband, and has two nephews in law enforcement who also help supervise him. Any break now in either his treatment or his ability to support himself (for example, interruption of his disability benefits) would significantly undermine and compromise his future success upon release from prison in another 3 to 4 months under a Guideline sentence (12 months, less good time, less the 7 months already served).

If I were in Zone C of the Guideline sentencing provisions, I could implement a so-called split sentence without even reducing the number of months (minimum of 12) that Offense Level 13 calls for. Since this defendant has already served over half that time, in Zone C I could sentence him now to home confinement of 5 months (the rest of the minimum 12–month sentence)

---

4. For departures where "there exists an aggravating or mitigating circumstance ... of a kind, or to a degree, not adequately taken into

consideration by the Sentencing Commission in formulating the guidelines." USSG § 5K2.0(a)(1).

as a condition of his 3–year term of supervised release. Together with other restrictive terms (continued mental health treatment, medication maintenance, abstinence from drugs and alcohol, prohibited association with others consuming drugs or alcohol, prohibited possession of any weapons, and permitting the supervising officer to search his residence for violations), I find that such a sentence would contribute to both the mental health of this defendant and the protection of the community.

Following *Booker*, — U.S. —, —, —, 125 S.Ct. 738, 765, 768, — L.Ed.2d —, —, —, I review the sentencing factors in 18 U.S.C. § 3553(a) in determining whether to apply the now advisory Guidelines. One factor listed there is "the need for the sentence imposed—... (D) to provide the defendant with needed ... medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The sentence I contemplate here would accomplish that better than the Guideline sentence. Another listed factor is the need "to protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C). I conclude that the marginal protection to the public afforded by a few more months in prison is more than offset by the increased risk upon this defendant's later release after the interruption of his treatment and other regimens. The sentence I contemplate here will in all likelihood better protect the public over the long term than the Guideline sentence. Section 3553(a)(1) instructs me to consider "the nature and circumstances of the of-

fense and the history and characteristics of the defendant." I have already addressed this in large part, but I also observe that here it is undisputed that the defendant would have rid himself of his firearms after his first hospitalization had he known that he could no longer legally possess them. Addressing the other section 3553(a) factors, I conclude that my sentence will adequately reflect the offense seriousness, promote respect for the law, provide just punishment and afford adequate deterrence. 18 U.S.C. § 3553(a)(1)(A),(B). (Sentencing disparity[5] and restitution are not at issue here. *Id.* § 3553(a)(6), (7).)

In conclusion, I find that although the Guidelines do not authorize a departure,[6] sentencing in Zone C (while maintaining the sentencing range of a Total Offense Level 13) will better accomplish the statutory goals of sentencing than the Guidelines do.

For these reasons, although I conclude that the Guidelines do not permit a departure, I treat them as advisory following *Booker*. Upon analyzing the sentencing factors contained in 18 U.S.C. § 3553(a) and considering the Guideline-recommended sentence, I impose a sentence where custody is within the Guideline range, but the nature of the custody is as if I had departed downward one level to a Zone C sentence.[7]

**So Ordered.**

---

5. I recognize that sentencing disparity is theoretically always at issue since one of the goals of sentencing is to impose similar punishments upon similarly situated defendants. But the sentence I impose here will not materially impede achievement of that goal.

6. Undoubtedly some will argue that I could have departed even under the Guidelines. But for the reasons I have explained in text, I would not have departed and, right or wrong, I certainly would not have been reversed for failing to depart.

7. I have written this memorandum of deci-

sion because I believe the issues addressed deserve airing, and it seems unlikely that there will be any appellate review of cases like this where the government has already agreed to a downward departure (no one has much incentive to appeal). Interestingly, another area where appellate review may not function well is where a sentencing judge sentences higher than the government asks for and the defendant appeals, for there no one may be interested in defending what the sentencing judge has done. This may be one reason why, as Justice Breyer observes, *Booker,* —— U.S. ——, —— – ——, 125 S.Ct. 738, 762–63, —— L.Ed.2d ——, —— – ——, sentencing judges are inclined to accept more "agreed-upon account[s] of the conduct at issue" than the Sentencing Commission envisaged.