**UNITED STATES of America,**

v.

**Harold B. WEST, Defendant.**

**No. 03 CR. 508(RWS).**

United States District Court,
S.D. New York.

Jan. 27, 2005.

Thomas F.X. Dunn, New York, NY, for defendant.

Steven G. Kobre, Assistant United States Attorney Mary Jo White, United States Attorney Criminal Division, New York, NY, for U.S.

## SENTENCING OPINION

SWEET, District Judge.

On May 25, 2004, defendant Harold B. West ("West"), also known as Bud West, appeared before the Honorable Michael H. Dolinger of this district and allocuted to the conduct charged in the third count of a three-count indictment, a count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. West's plea was accepted on July 23, 2004, and he is presently scheduled to be sentenced on January 27, 2005.

In the months between West's allocution to the offense conduct charged in the third count of the indictment and his scheduled sentencing hearing, the law of sentencing has undergone substantial change. First, in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the U.S. Supreme Court applied the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),[1] and held that the relevant maximum "for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*," rather than the sentence that might be imposed based upon additional facts found by the sentencing court. *Blakely*, 124 S.Ct. at 2537 (emphasis in original and citations omitted).[2] In so holding, and notwithstanding an explicit disclaimer to the

---

[1]. *Apprendi* stands for the proposition that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 120 S.Ct. at 2362–63.

[2]. The *Blakely* Court rejected attempts to distinguish *Apprendi* and its progeny, explaining that it was of little import "[w]hether the judicially determined facts *require* a sentence enhancement or merely *allow* it" where "the verdict alone does not authorize the sentence." *Blakely*, 124 S.Ct. at 2538 n. 8 (emphasis in original).

contrary, *see id.*, 124 S.Ct. at 2538 n. 9, the Supreme Court cast doubt on the continued viability of the mandatory federal sentencing regime under the U.S. Sentencing Guidelines (the "Guidelines"), which have dictated sentencing practice for some twenty years.

With the issuance of the recent opinion in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court confirmed the application of the principles enunciated in *Blakely* to the federal Guidelines. In the first of two separate majority opinions, the Court reaffirmed the principle articulated in *Apprendi*, holding that the Sixth Amendment is violated where an enhanced sentence is imposed under the Guidelines based upon judicially determined facts and explaining that,

> Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Booker*, 125 S.Ct. at 756 (Stevens, J.). A different majority of the Justices of the Supreme Court concluded that, in light of the first majority's constitutional holding, the appropriate remedial measure required the severance and excision of two provisions of the federal sentencing statute, including 18 U.S.C. § 3553(b)(1), the provision that made the Guidelines mandatory. *See id.*, 125 S.Ct. at 756–57 (Breyer, J.). "So modified, the Federal Sentencing Act, *see* Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. § 991 *et seq.*, makes the Guidelines effectively advisory." *Id.*, 125 S.Ct. at 756–57. As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guidelines ranges, . . ., but it permits the court to

tailor the sentence in light of other statutory concerns as well. . . ." *Id.*, —— U.S. ——, at ——, 125 S.Ct. 738, —— L.Ed.2d ——, at ——, 2005 WL 50108, at *16 (citations omitted).

Thus, in accordance with *Booker* and with the mandate of 18 U.S.C. § 3553(a), a district court must consider a variety of factors in imposing a sentence, including,

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed [to satisfy certain articulated purposes] . . . ;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Guidelines calculations are to be treated "as just one of a number of sentencing factors." *United States v. Ranum*, 353 F.Supp.2d 984, 985–87 (E.D.Wis.2005) (recognizing that several of the factors identified in subsection 3553(a) conflict with the prescriptions and proscriptions of the Guidelines, and that such conflicts will require resolution by district courts).

Certain district courts imposing sentences in the wake of *Booker* have concluded that the Guidelines should remain the dominant or even determinative factor in sentencing analysis. *See, e.g., United*

*States v. Barkley*, 369 F.Supp.2d 1309, 1317–18 (N.D.Okla.2005) (stating that the Guidelines would be "faithfully follow[ed]" in all cases, "with only such modifications as the Court finds are necessary to satisfy the requirements of the Sixth Amendment articulated in *Blakely*"); *United States v. Wilson*, 350 F.Supp.2d 910, 911 (D.Utah 2005) (concluding that the Guidelines would be given "heavy weight" in determining an appropriate sentence and that the sentencing court would "only depart . . . in unusual cases"). Under 18 U.S.C. § 3553(a), however, the sentencing court is required to consider a host of individual variables and characteristics excluded from those calculations called for by the Guidelines. *See Ranum*, 353 F.Supp.2d at 987–89 (rejecting the notion that the Guidelines must be afforded heavy weight and concluding that "courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as that the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors"); *see also United States v. Jones*, 352 F.Supp.2d 22, 25–26 (D.Me.2005) (reviewing the factors identified in subsection 3553(a) "in determining whether to apply the now advisory Guidelines" and concluding that the Guidelines would not be followed under the circumstances of the case).

The appropriate consideration of a number of the factors identified in subsection 3553(a), such as a defendant's history and characteristics, requires reliance upon facts not typically found by a jury nor admitted by a defendant at plea allocution, much as a sentencing court engaged in fact-finding under the Guidelines regime. Nothing in *Booker* appears to suggest that such fact-finding, as limited by the principles of *Apprendi* and its progeny, is inappropriate. Accordingly, this Court will sentence West based upon the facts admitted in connection with his plea and upon those facts found by the Court in the context of analysis under subsection 3553(a), as limited by *Apprendi* and *Booker*.

### The Offense Conduct and Prior Proceedings

A complaint in this matter was filed on February 28, 2003, and West was arrested in the Central District of California on March 5, 2003. A three-count indictment was subsequently filed on April 23, 2003, the third count of which charges West with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. Specifically, count three charges that, on or about April 28, 1999, in this district and elsewhere, West "unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses, representations, and promises, to wit, a fraudulent scheme to solicit investments in a patented program that [West] did not own and to misappropriate investors' funds, did transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice" $5,000 from a Northwest Airlines Employee Credit Union account located in Minnesota to a bank account in New York, New York. (Indictment at ¶ 10.)

On May 25, 2004 West pled guilty to the third count of the indictment, pursuant to a plea agreement signed by him on that same date. The plea agreement provided that,

> The parties agree that because the defendant's conduct, including relevant conduct, occurred from in or about December 1998 through in or about January 2003, the 2002 U.S. Sentencing Guidelines are applicable here.

1. Pursuant to § 2B1.1(a), U.S.S.G., the base offense level is 6.

2. Because the loss was more than $2,500,000 but less than $7,000,000, the base level is increased by 18 levels, pursuant to § 2B1.1(b)(1)(J), U.S.S.G. [ ]

3. Because the offense involved fifty or more victims, the base level is increased by four levels, pursuant to ... § 2B1.1(b)(2)(B), U.S.S.G. [ ]

4. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2–level reduction will be warranted, pursuant to § 3E1.1(a), U.S.S.G. Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional 1–level reduction is warranted, pursuant to § 3E1.1(b), U.S.S.G., because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 25.

(Plea Agreement at 2.) Based upon these calculations and in light of the information known concerning West's criminal history, West's stipulated sentencing Guidelines range was 57 to 71 months. (*See id.*) The parties further agreed that neither a downward nor an upward departure from the sentencing range set forth above was warranted. (*See id.* at 3.)

Appearing before Judge Dolinger to proffer his plea on the third count, West affirmed that, twelve years previously, he started a project to design, patent and market a product that would permit marketing and messaging at traffic light intersections. He further affirmed that he did, in fact, design a traffic light message center, obtain a patent for it and seek to develop the means for manufacturing and selling the product, including by having a prototype installed at a traffic intersection in Tempe, California.

West acknowledged that, as part of his efforts to invent and distribute this product, he sought financing from private investors. In particular, he affirmed having sold interests in the patent rights he had obtained, typically receiving $5,000 from each investor for each investment unit in exchange for one percent interest in his patent programs. Over time, West affirmed, he raised several million dollars in this manner.[3]

West affirmed that many investors and prospective investors communicated to him by telephone, and these calls were often made interstate. In addition, West affirmed that investors wired money to him in a bank account in New York through interstate banking transactions. He clarified that the bank account that received the funds in New York was located within this district.

West further affirmed that, as the project wore on, he faced hurdles in trying to

---

**3.** Paragraphs 4 and 5 of the indictment, incorporated by reference into count three, charge that West sold so-called points, each purportedly representing one percent of West's ownership interest in the traffic light message center program. Based upon the terms of the investment contracts, it is charged that no more than 100 points could properly have been outstanding at any one time. West is charged with having "sold and caused to be sold approximately 1,000 'points' to investors in nine different states. The total proceeds from sales of the 'points' exceeded approximately $8 million." (Indictment at ¶ 5.)

realize his dream of turning an innovative idea into a profitable business, and he faced pressure and frustration as a result of falling short of his goals. He further affirmed that, at times, it was particularly hard for him to keep his investors happy and to raise new funds to keep the project going. He freely admitted that, at these times, he communicated things to existing investors and would-be investors that were simply not true. He affirmed that, mostly, he lied to these people about the progress he was making in bringing the traffic light message center to market.

West acknowledged having given these people false hopes with the intention of luring them into being satisfied with their investments or of causing them to provide new funding. He further acknowledged having knowledge that such misrepresentations were important to the investors and in their decision-making process. He agreed that these misrepresentations were made within five years of the date of his indictment and admitted that, as a result of his misrepresentations, investors wired him money between New York and other states. He further admitted that, on or about April 28, 1999, one investor wired $5,000 to a New York account from a bank in Minnesota relying, at least in part, on some misrepresentation that he had made.

In sum, West admitted that he had made misrepresentations with the intent of deceiving current and future investors, that he did this with the intent of obtaining and retaining funds improperly, and that he knew at the time that he made certain misrepresentations that what he was doing was wrong.

West affirmed that the time period in which these misrepresentations were made was between in or about December 1998 through January 2003.

### Applicable Statutory Maximums and Other Provisions

The maximum term of imprisonment for count three is five years, pursuant to 18 U.S.C. § 1343.

If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2). West is eligible for not less than one nor more than five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense at issue is a felony, pursuant to 18 U.S.C. § 3563(a)(2) one of the following must be imposed as a condition of probation, unless extraordinary circumstances exist: a fine, restitution, or community service.

Full restitution to the victim is required under 18 U.S.C. §§ 3663A and 3664.

The maximum fine authorized by statute is "not more than the greater of twice the gross gain or twice the gross loss," pursuant to 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

### The Guidelines

In accordance with *Booker* and pursuant to 18 U.S.C. § 3553(a)(4), the Guidelines will be considered in sentencing West.

The November 1, 2002 edition of the United States Sentencing Commission, *Guidelines Manual* ("U.S.S.G.") has been used in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11(b)(1).

The guideline for a violation of 18 U.S.C. § 1343 is found in U.S.S.G. § 2B1.1, which provides for a base offense level of six in accordance with U.S.S.G. § 2B1.1(a).

Pursuant to U.S.S.G. § 2B1.1(b)(1), the offense level is increased if the loss exceeded $5,000. As West has stipulated to a loss of more than $2,500,000 but less than $7,000,000, the offense level is increased by 18 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(J). Insofar as the Presentence Investigation Report prepared by the U.S. Probation Office relied upon a loss figure of $8,000,000, that amount has not been admitted by West in connection with his guilty plea and the greater figure therefore will not be employed to enhance the calculation of the advisory Guidelines sentence in this case.

Pursuant to U.S.S.G. § 2B1.1(b)(2)(B), the offense level is further enhanced if the offense involved fifty or more victims. As West has stipulated that the offense did involve more than fifty victims, the offense level is enhanced by four levels.

Based upon West's plea allocution, he has shown recognition of responsibility for the offense. Based upon his timely notification of his intention to plead guilty and because the base offense level is greater than 16, the offense level is reduced by three levels pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b).

The resulting adjusted offense level is 25.

Based upon the information supplied by the U.S. Probation Office and with consideration given to the objections to certain aspects of that information contained in a letter dated January 20, 2005 from West's counsel, West's prior convictions are not counted in calculating his criminal history points, pursuant to U.S.S.G. § 4A1.2(e)(3). Accordingly his Criminal History Category of I.

Based upon a total offense level of 25 and a Criminal History Category of I, the Guidelines range for a term of imprisonment is 57 to 71 months.

The Guidelines range for a term of supervised release is at least two years but not more than three years, pursuant to U.S.S.G. § 5D1.2(a)(2). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to U.S.S.G. § 5D1.1(b). Supervised release is required under the Guidelines if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to U.S.S.G. § 5D1.1(a).

West is not eligible for probation under the Guidelines because the applicable guideline range is in Zone D of the Sentencing Table, pursuant to U.S.S.G. § 5B1.1, comment. n. 2.

The fine range for the instant offense under the Guidelines is from $10,000 to $14,000,000, pursuant to U.S.S.G. §§ 5E1.2(c)(3)(A) and 5E1.2(c)(4).

Subject to Wheeler's ability to pay, the Guidelines direct that the expected costs to the Government of any imprisonment, probation, or supervised release shall be considered in imposing a fine, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the U.S. Courts suggests a monthly cost of $1,931.97 to be used for imprisonment, a monthly cost of $292.21 for supervision, and a monthly cost of $1,590.66 for community confinement.

*The Defendant*

In accordance with 18 U.S.C. § 3553(a)(1), the history and characteris-

tics of a defendant are to be considered in imposing a sentence. The following facts are derived from information provided by the U.S. Probation Office and from corrections to that information provided by West, through his counsel.

West was born in 1949 and is currently 55 years old. West's mother left home when he was two years old and he and his siblings were raised by their father in poor economic conditions. He graduated high school in 1968 and reportedly completed one year in college prior to enlisting in the U.S. Army. According to military records, West was honorably discharged in 1973.

In 1971 West reportedly married Vickie Walker. The couple had two children, and reportedly divorced in 1982.

In 1982 West reportedly married Barbara Kidd. The couple had four children, all of whom reside in San Luis Obispo, California. The children from West's second marriage range in age from 20 to 26. Three of West's children as well as his wife have submitted letters to the Court on West's behalf.

There are conflicting reports as to whether West is currently employed. West's wife earns approximately $67,000 annually. Based upon the information provided to the U.S. Probation Office, the couple's net monthly cash flow is approximately $1,400. West has reported an outstanding judgment for approximately $800,000 dated April 11, 2003 as a result of a civil lawsuit filed against him. A credit inquiry revealed outstanding balances of approximately $16,000.

West reportedly suffers from Barretts Disease and has a long-term drinking problem as well as a family history of alcoholism. A submission on behalf of West indicates additional difficulties, including depression and symptoms of alcohol abuse.

### The Sentence

With due consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the purposes set forth in 18 U.S.C. § 3553(a)(2) and the history and characteristics of the defendant, and with due consideration of the Sixth Amendment constraints set forth in *Apprendi*, West is sentenced to 60 months' imprisonment and three years' supervised release for the instant offense. This sentence, which falls toward the bottom of the advisory Guidelines range, represents the statutory maximum terms of imprisonment and supervised release for the underlying offense. The terms imposed befit the need for a sentence, *inter alia*, to reflect the seriousness of the offense and to provide just punishment in light of an offense that affected scores of victims, some 200 of whom have submitted statements to the Court describing the financial, familial and emotional toll that their dealings with West has taken. By imposing a sentence within the Guidelines range, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" is presumptively satisfied. 18 U.S.C. § 3553(a)(6).

A special assessment fee of $100 payable to the United States is mandatory and due immediately. In consideration of the factors listed in 18 U.S.C. § 3572, no fine is imposed.

West shall make restitution in the amount of $7,000,000, payable to the Clerk, U.S. District Court, Southern District of New York, New York, N.Y. 10007, for disbursement. A list of victims will be provided by the Government.[4]

---

4. Insofar as the U.S. Probation Office has

recommended restitution in the amount of

If West is engaged in a BOP non-UNICOR work program, he shall pay $25 per quarter toward the criminal financial penalties. If he participates in the BOP's UNICOR program as a grade 1 through 4, however, he shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. § 545.11. Any payment made that is not payment in full shall be divided proportionately among the persons named.

The restitution shall be paid in monthly installments of 15% of gross monthly income over a period of supervision to commence 30 days after release from custody. West shall notify the U.S. Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

As West has kept all court appearances, has been in compliance with all terms and conditions of his pretrial release, and is not viewed as a flight risk or a danger to the community, he is deemed a good candidate for voluntary surrender. West is therefore directed to voluntarily surrender to a facility designated by the Bureau of Prison, or to the U.S. Marshals, within 45 days of imposition of sentence.

West shall report to the nearest Probation Office within 72 hours of release from custody and shall be supervised by the district of residence.

As mandatory conditions of supervised release, West shall (1) abide by the standard conditions of supervision (1–13); (2) not commit another federal, state, or local crime; (3) not illegally possess a controlled substance; and (4) not possess a firearm or destructive device.

The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing, in view of West's reported problem with alcohol. West shall participate in an alcohol aftercare treatment program under a co-payment plan, which may include urine testing at the direction and discretion of the probation officer.

West shall provide the probation officer with access to any requested financial information. He shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless he is in compliance with the installment payment schedule.

This sentence is subject to modification at the sentencing hearing now set for January 27, 2004.

It is so ordered.

---

$8,000,000, that amount has not been admitted by West in connection with his guilty plea and, therefore, may not be employed to enhance his sentence beyond that which otherwise would be authorized by the facts established in connection with the plea of guilty. *But cf.* *United States v. Einstman*, 325 F.Supp.2d 373, 382 (S.D.N.Y.2004) (concluding that a judicial finding of the amount of restitution does not violate *Apprendi* in a case where the amount of restitution ordered was less than the amount of loss admitted by the defendant in his plea allocution).