833 F.2d 861
 Yolanda Camacho DeGURULES, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Luis HERNANDEZ-LEGUIZAMO and Lucila Salgado De Hernandez, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 86-7353, 86-7106.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Feb. 20, 1987*.
Submission Vacated May 29, 1987.
Resubmitted Sept. 10, 1987--86-7353.
Oct. 21, 1987--86-7106.
Decided Dec. 7, 1987.
 
 Manuel J. Monquia, Escondido, Cal., for petitioner Hernandez-Leguizamo.
 Jan Joseph Bejar, San Diego, Cal., for petitioner DeGurules.
 Richard K. Willard, Asst. Atty. Gen., James A. Hunolt, and Donald A. Couvillon, Washington, D.C., for the respondent.
 Petitions for Review of Orders of the Immigration and Naturalization Service.
 Before KILKENNY, SNEED and O'SCANNLAIN, Circuit Judges.
 KILKENNY, Senior Circuit Judge:
 
 
 1
 These two cases have been consolidated on appeal because they raise an identical issue, viz., the retroactivity vel non of a recent amendment to the Immigration and Nationality Act, 8 U.S.C. Secs. 1101 et seq. We review de novo, see Sea-Land Serv., Inc. v. Murrey & Son's Co., 824 F.2d 740, 742 (CA9 1987) (question of statutory construction involving Congressional intent reviewed de novo ), and we remand.
 
 
 2
 Each of the petitioners in these consolidated appeals faces deportation for failure to meet the statutory seven-year physical presence requirement of 8 U.S.C. Sec. 1254(a)(1).[1] At the time the Immigration Judges ("IJ's") and the Board of Immigration Appeals ("BIA") rendered their decisions in these cases, they were guided by the Supreme Court's recent holding in I.N.S. v. Phinpathya, 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984). In that case, the Supreme Court interpreted section 1254(a)(1) as requiring a strictly continuous physical presence, without interruption, for seven years in order for an alien to qualify for permanent resident status. 464 U.S. at 193-94, 104 S.Ct. at 591.
 
 
 3
 In 1986, Congress effectively nullified the Supreme Court's interpretation of section 1254(a)(1) by way of an amendment contained in the Immigration Reform and Control Act ("the Act"), Pub.L. No. 99-603, 100 Stat. 3359 (1986). Section 315(b) of the Act reads as follows:
 
 
 4
 "An alien shall not be considered to have failed to maintain continuous physical presence in the United States ... if the absence from the United States was brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence."
 
 8 U.S.C. Sec. 1254(b)(3).[2]
 
 5
 The legislative history behind this language makes clear that Congress intended to abrogate the strictness of the holding in Phinpathya:
 
 
 6
 "The Committee Amendment relaxes the recent Supreme Court interpretation with respect to the seven year 'continuous physical' residence requirement to qualify for suspension of deportation under section 244 [8 U.S.C. Sec. 1254] of the Immigration and Nationality Act (Phinphathya [sic] v. INS, 104 S.Ct. 584 [78 L.Ed.2d 401] (1984))[.] That decision held that any departure from the U.S. during the seven year period was interruptive of the residence requirement, thus making the alien ineligible for relief. This Amendment relaxes the residence requirement in the case of a 'brief, casual, and innocent' departure from the U.S."
 
 
 7
 H.R.Rep. No. 3810, 99th Cong., 2nd Sess. at 78, reprinted in 1986 U.S. Code Cong. & Admin. News 5649, 5682.
 
 
 8
 Because the above legislation was enacted subsequent to the decisions rendered by the IJ's and the BIA in the instant appeals, and none of the parties has raised the issue on appeal, we are confronted with a question of first impression, viz., whether sua sponte we may apply retroactively the above amendment to these pending cases.
 
 
 9
 Ordinarily, this court will not address issues not properly raised by the parties. See Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d 1374, 1376 (CA9 1985) (issue neither raised in appellant's brief nor supported by citation to authority will not be considered by appellate court). On the other hand, a fundamental principle of our jurisprudence is that a court will apply the law as it exists when rendering its decision. Bradley v. Richmond Sch. Bd., 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). In the absence of a legislative pronouncement or history to the contrary, this principle applies even when a change to existing law occurs during the pendency of an appeal. Id. at 715-16; City of Great Falls v. United States, 673 F.2d 1065, 1068 (CA9 1982) (per curiam) (retroactive application of statutory changes occurring during direct review of case).
 
 
 10
 An exception to this rule is that a new law will not be applied retroactively if such will result in manifest injustice. Campbell v. United States, 809 F.2d 563, 575 (CA9 1987). Whether a retroactive application will cause manifest injustice is in turn determined by an assessment of three factors: (1) the nature and identity of the parties; (2) the nature of their rights; and (3) the nature of the impact of the change in law upon those rights. Id. (citing and quoting Bradley, 416 U.S. at 717, 94 S.Ct. at 2019).
 
 
 11
 In our examination of the first of these three factors, we note that one of the parties to this action is the federal government. As we stated in Campbell, supra, "[T]he fact that the party adversely affected by the new law is a governmental entity makes a finding of manifest injustice less likely." 809 F.2d at 575. In addition, we note that the statutory change implicates a matter of great national concern, viz., immigration policy. As stated by Chief Justice Marshall in United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103, 2 L.Ed.5 (1801),
 
 
 12
 "[I]n great national concerns ... the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside."
 
 
 13
 5 U.S. (1 Cranch) at 110 (quoted in Bradley, 416 U.S. at 712, 94 S.Ct. at 2016). Accordingly, an assessment of the nature and identity of the parties points in favor of the retroactive application of 8 U.S.C. Sec. 1254(b)(3).
 
 
 14
 The second of the three criteria set out in Bradley holds that an intervening change to existing law should not be applied to a pending action where "to do so would infringe upon or deprive a person of a right that had matured or become unconditional." Bradley, 416 U.S. at 720, 94 S.Ct. at 2020. Since "the case before us does not concern antecedent rights vesting prior to the enactment date[,]" Campbell, 809 F.2d at 575, but instead involves a grant or expansion of an access to a remedy, it is obvious that the retroactive application of 8 U.S.C. Sec. 1254(b)(3) here would neither infringe upon nor deprive anyone of a matured or unconditional right. We therefore conclude that the second factor under Bradley militates in favor of retroactivity.
 
 
 15
 Finally, we must determine whether a retroactive application of 8 U.S.C. Sec. 1254(b)(3) would create "the possibility that new and unanticipated obligations [might] be imposed upon a party without notice or an opportunity to be heard." Bradley, 416 U.S. at 720, 94 S.Ct. at 2021. In making such an inquiry we must focus on "whether the new statutory obligation, if known, would have caused the [appellants] to alter [their] conduct." Campbell, 809 F.2d at 576 (citing Bradley, 416 U.S. at 720, 94 S.Ct. at 2020; and City of Great Falls, 673 F.2d at 1069).
 
 
 16
 The new law imposes no new or unanticipated obligations upon any party,[3] nor can it be seriously maintained that the petitioners would have behaved differently had they known beforehand of the change to the law. Cf., In re Yagman, 796 F.2d 1165, 1186 (CA9) (increased and unanticipated obligations as result of intervening amendment to FRCivP 11 precluded its retroactive application), as modified, 803 F.2d 1085 (1986). The changed law constitutes not an increased obligation but a statutory relaxation of the continuous physical presence requirement of 8 U.S.C. Sec. 1254(a)(1).
 
 
 17
 From our examination of the facts of these cases in light of the criteria set forth in Bradley, we conclude that a retroactive application of 8 U.S.C. Sec. 1254(b)(3) is appropriate here. Accordingly, the decisions below are hereby VACATED and REMANDED to the BIA for return to a hearing officer for proceedings consistent herewith.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 8 U.S.C. Sec. 1254(a)(1) (in relevant part):
 "... [T]he Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien ... who applies to the Attorney General for suspension of deportation and is deportable under any law of the United States ...; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence[.]" (emphasis added)
 
 
 [2]
 Section 315(b) of the Act was codified as subparagraph (b)(3) of section 1254; there are no subparagraphs (1) or (2)
 
 
 [3]
 More precisely, while the statutory change may result in a more searching factual inquiry on the part of the Government where questions of continuous physical presence are involved, no new duty is imposed thereby on either side