**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ALFRED ARNOLD AMELINE,
            *Defendant-Appellant.*

No. 02-30326

D.C. No.
CR-02-00011-SEH

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Submitted November 4, 2003*
Opinion Filed July 21, 2004
Rehearing Granted February 9, 2005
Opinion on Rehearing Filed February 9, 2005
Seattle, Washington

Filed February 9, 2005

Before: Kim McLane Wardlaw, Ronald M. Gould, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Richard A. Paez

---

*The Panel unanimously finds this case suitable for decision without oral argument.

## COUNSEL

Brian P. Fay, Angel, Coil & Bartlett, Bozeman, Montana, for the appellant.

William W. Mercer, United States Attorney, and Lori Harper Suek, Assistant United States Attorney, Great Falls, Montana; Michael A. Rotker, Attorney, United States Department of Justice, Washington, D.C., for the appellee.

## ORDER

Appellant Alfred Ameline's Petition for Rehearing is granted. The opinion filed on July 21, 2004, *United States v. Ameline*, 376 F.3d 967 (9th Cir. 2004), is withdrawn. A new opinion is filed simultaneously with this order.

## OPINION

PAEZ, Circuit Judge:

In light of the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005), we granted appellant Alfred Ameline's petition for rehearing to reconsider our decision in *United States v. Ameline*, 376 F.3d 967 (9th Cir. 2004). In our original opinion, we held that, because Ameline's sentence under the United States Sentencing Guidelines was based on facts found by the district judge by a preponderance of the evidence, his sentence violated the Sixth Amendment as construed by the Supreme Court in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). We vacated Ameline's sentence and remanded for resentencing with directions that, if necessary, a jury determine the amount of drugs attributable to Ameline and whether he possessed a weapon in connection with his conviction, two factors that could enhance his sentence under the Sentencing Guidelines.

After our decision issued and while Ameline's petition for rehearing was pending, the Supreme Court granted certiorari in *United States v. Booker*, 375 F.3d 508 (7th Cir.), *cert. granted*, 125 S. Ct. 11 (2004), and *Fanfan v. United States*, 2004 WL 1723114 (D. Me. June 28, 2004), *cert. granted before judgment*, 125 S. Ct. 12 (2004), to consider whether, after *Blakely*, application of the federal Sentencing Guidelines violates a defendant's Sixth Amendment rights. In *Booker*, the Court held that "the Sixth Amendment as construed in *Blakely* does apply to the Sentencing Guidelines." *Booker*, 125 S. Ct. at 745. To remedy the Sixth Amendment violation, the Court severed two provisions from the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, one which made the Sentencing Guidelines mandatory and one that depended on the mandatory nature of the Guidelines. With the excision of these two provisions, the Court held that the Sentencing Guidelines are now "effectively advisory." *Booker*, 125 S. Ct. at 757.

Our original opinion was consistent with *Booker*'s holding that the Sixth Amendment as construed in *Blakely* applies to the Sentencing Guidelines. It was at odds, however, with the Court's severability remedy that eliminated the mandatory nature of the Sentencing Guidelines. Applying *Booker* to the present case, we conclude that (1) the Court's holding in *Booker* applies to all criminal cases pending on direct appeal at the time it was rendered; (2) because Ameline did not raise a Sixth Amendment argument at the time of sentencing we review for plain error; (3) Ameline's sentence violated the Sixth Amendment and constituted plain error; and (4) the error seriously affected the fairness of Ameline's proceedings. Accordingly, we vacate Ameline's sentence and remand for resentencing.

To provide guidance to the district court in resentencing Ameline, we also address Ameline's challenge to the district court's ruling that he bore the burden of disproving the amount of methamphetamine that the Presentence Report

("PSR") attributed to him. In addressing this issue, we conclude that *Booker* did not relieve the district court of its obligation to determine the Sentencing Guidelines range for Ameline's offense of conviction. In determining the guideline range, the district court must still comply with the requirements of Federal Rule of Criminal Procedure 32 and the basic procedural rules that we have adopted to ensure fairness and integrity in the sentencing process. Although the district court is not bound by the Sentencing Guidelines range, basic procedural fairness, including the need for reliable information, remains critically important in the post-*Booker* sentencing regime.

## I.

Ameline pled guilty to knowingly conspiring to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. His plea agreement did not specify the quantity of methamphetamine for purposes of sentencing, but rather left that determination to the district court at the time of sentencing. At Ameline's change of plea hearing, he disputed the government's offer of proof that he distributed one and a half kilograms of methamphetamine, but admitted that "some methamphetamine" was involved in his offense conduct. At the end of the hearing, Ameline's counsel informed the court that he expected to present witnesses who would dispute the amount of methamphetamine that the government attributed to Ameline.

The PSR prepared by the Probation Office attributed 1,079.3 grams of methamphetamine to Ameline for purposes of applying the drug equivalency table found in the United States Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(c), resulting in a recommended base offense level of 32. The PSR also recommended a two-level enhancement pursuant to § 2D1.1(b)(1) for possession of a weapon in connection with the offense. This enhancement was based on hearsay testimony by a confidential informant that Ameline

sold to him methamphetamine in exchange for a rifle, and that he once witnessed Ameline threaten his son with a handgun.

After the probation officer disclosed the draft PSR to Ameline and the government, Ameline, as required by the court's April 30, 2002 Sentencing Order, presented the probation officer with a series of objections to the quantity of methamphetamine attributed to him in the report. Ameline also objected to the two paragraphs that formed the basis of the two-level weapon enhancement as "false." In his letter objecting to the draft PSR, Ameline explained the basis for his objections and the evidence on which he would rely at the sentencing hearing. The probation officer dismissed Ameline's objections and reaffirmed his determination of the quantity of methamphetamine in the original PSR, as well as the upward enhancement. In Ameline's pre-hearing Sentencing Memorandum, he objected to the amount of methamphetamine attributed to him in the PSR. Ameline's memorandum detailed the evidence that he intended to rely upon to dispute the drug quantity determined in the PSR.

At the beginning of the sentencing hearing, before any witnesses testified, the district judge informed the parties how he intended to proceed:

> It is the position of this court in this matter, as it is in all such cases, that the facts as recited in the presentence report are prima facie evidence of the facts set out there; that if the defendant challenges the facts set forth in the presentence report, it is the burden of the defendant to show that the facts contained in the report are either untruthful, inaccurate, or otherwise unreliable.

The district judge then instructed defense counsel to call his first witness.[1]

---

[1] Before counsel called any witnesses, the court again reiterated its position:

Consistent with his objections, Ameline presented testimony from "Toro," aka Shawn Rodriguez, Reuben McDowell, Michael Lamere, and a confidential informant, Dan Metcalf, to dispute the amount of methamphetamine attributed to him in the PSR. At the conclusion of the sentencing hearing, the district court found that 1,603.60[2] grams of methamphetamine were attributable to Ameline, for a base offense level of 34. The district court stated, "I should let all parties know that all findings are based upon a preponderance of the evidence standard and are established at least to that standard in the view of the court." The district court found the § 2D1.1(b)(1) weapon enhancement "undisputed," raising the offense level to 36, but deducted three points for timely acceptance of responsibility. The resulting total offense level was 33. The district court sentenced Ameline to 150 months, in the middle of the 135 to 168 month range established by the Sentencing Guidelines.

## II.

## A.

On appeal, Ameline initially challenged the district court's determination that he bore the burden of disproving the fac-

---

[I]t is my position that the statements in the presentence report, that is, statements of fact, are reliable on their face and prima facie evidence of the facts there stated. And I will be taking those into account to the extent relevant to the obligations that I have in fashioning sentence and fixing responsibility for drug quantities, *if they are not overcome by other evidence presented at this hearing*. Be guided accordingly.

(emphasis added).

[2]This amount was greater than that recommended by the PSR. The PSR described two additional transactions, but the probation officer did not include those transactions in calculating the overall drug amount. The district court, however, included the amounts from those two additional transactions, thus establishing an even higher base offense level.

tual statements in the PSR relating to drug quantity. He also challenged the court's determination that the hearsay evidence used to prove drug quantity was sufficiently reliable. Ameline did not raise a Sixth Amendment challenge to his sentence. When we submitted Ameline's appeal for decision on November 4, 2003, he had contested neither the preponderance of the evidence standard used by the district judge nor the propriety of the judge as factfinder.

Nonetheless, in our original opinion, we noted that the Supreme Court's recent decision in *Blakely* raised the possibility that Ameline's initial challenges had been subsumed by a violation of his Sixth Amendment rights. Based on the Supreme Court's ruling in *Blakely* that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*," *Blakely*, 124 S. Ct. at 2537, we concluded that *Blakely* worked "a sea change in the body of sentencing law." *Ameline*, 376 F.3d at 973. In light of the potential impact of *Blakely* on the Sentencing Guidelines, we also concluded that we would be remiss if we did not, *sua sponte*, examine if and how *Blakely* applied to sentences under the Sentencing Guidelines. *See DeGurules v. INS*, 833 F.2d 861, 863 (9th Cir. 1987) ("[A] fundamental principle of our jurisprudence is that a court will apply the law *as it exists when rendering its decision*. . . . [T]his principle applies even when a change to existing law occurs during the pendency of an appeal." (emphasis added)).[3]

---

[3]Our precedent provides ample support for our authority to consider *sua sponte* a claim that was not initially raised on appeal. We previously have "examine[d] *sua sponte* the application of [a] recent Supreme Court opinion" to a defendant's conviction. *United States v. Garcia*, 77 F.3d 274, 276 (9th Cir. 1996); *see also Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1488 (9th Cir. 1995) (holding that "[w]e will review an issue that has been raised for the first time on appeal under certain narrow circumstances," including "when a change in law raises a new issue while an appeal is pending"); *In re Skywalkers, Inc.*, 49 F.3d 546, 548 n.4 (9th Cir. 1995) (recognizing that a "change in law pending appeal permits entertainment of [an] issue not theretofore raised").

Because Ameline's initial challenges to his sentence assumed a federal sentencing scheme in which the district judge, not the jury, determined the material facts that could increase the severity of punishment using a preponderance of the evidence standard and because *Blakely* undermined the constitutional validity of sentences imposed under this generally mandatory sentencing scheme, we proceeded to address whether *Blakely* applied to the Sentencing Guidelines. Thus, that Ameline did not initially challenge the applicable standard of proof or the judge's factfinding authority at his sentencing hearing did not bar our *sua sponte* consideration of whether *Blakely*'s rules applied to the Sentencing Guidelines. We held, however, that, because Ameline did not interpose his Sixth Amendment objection to his sentence in the district court, we would review for plain error.

**[1]** Our determination that *Blakely* applied to cases pending on direct appeal was ultimately consistent with the remedial scheme set forth in Justice Breyer's opinion for the Court in *Booker*. *See Booker*, 125 S. Ct. at 769. In *Booker*, the Court held that "we must apply today's holdings—both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act—to all cases on direct review." *Id*. In so holding, the Court recognized that not all cases would warrant a new sentencing hearing because any error might be harmless, or resentencing might not be warranted under a plain error standard of review. *See id*. We again conclude that, although Ameline did not raise a Sixth Amendment challenge to his sentence in the district court or in his initial brief on appeal, we may properly consider his post-*Blakely*/*Booker* Sixth Amendment challenge to his sentence.

### B.

**[2]** In *Booker*, the Court reaffirmed its recent holding in *Blakely* " 'that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of facts reflected in the jury verdict or admitted by*

*the defendant.*' " *Id.* at 749 (quoting *Blakely*, 124 S. Ct. at 2537). Emphasizing the mandatory nature of the Sentencing Guidelines, the Court determined that there was "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington [sentencing] procedures at issue in [*Blakely*]." *Id.* As the Court explained, "[t]he [Sentencing] Guidelines as written . . . are not advisory; they are mandatory and binding on all judges." *Id.* at 750. Thus, the Court held that the Sixth Amendment as construed by *Apprendi* and *Blakely* applied to the Sentencing Guidelines.

The manner in which the district court arrived at Booker's sentence highlighted the constitutional deficiencies in the Sentencing Guidelines. Booker was convicted of possessing with intent to distribute at least 50 grams of cocaine base (crack), a violation of 21 U.S.C. § 841(a). *Id.* at 745. Although the jury convicted Booker based upon evidence that he had 92.5 grams in his duffel bag, the district judge held a post-trial sentencing hearing and found by a preponderance of the evidence that Booker had possessed an additional 566 grams of crack cocaine and further found that Booker had obstructed justice. On the basis of these additional facts, the Sentencing Guidelines required the district judge to impose a sentence between 360 months and life imprisonment. As a result, Booker received a sentence of 30 years, rather than the sentence of 21 years and 10 months that he would have received based on the facts found by the jury. *Id.* Booker's sentence—360 months—was not authorized by the jury's verdict and was therefore improper under the Sixth Amendment.

[3] Here, Ameline's sentence under the Sentencing Guidelines exceeded "the maximum authorized by the facts established by a plea of guilty or a jury verdict." *Id.* at 756. Ameline admitted to only a detectable amount of methamphetamine.[4] Under 21 U.S.C. § 841(b)(1)(C), Ameline faced a

[4]We previously have held that "even where due process requires that a drug quantity allegation be pleaded in the indictment and proved to a jury

potential sentence of 0 to 20 years. However, the maximum sentence under the Sentencing Guidelines that the district judge could have imposed on the basis of Ameline's admission—without any additional factual findings—would have been sixteen months, given a total base offense level of 12.[5] *See* U.S.S.G. § 2D1.1(c)(14) (base offense level of 12 applies when the offense involved "[l]ess than 2.5 G of Methamphetamine, or less than 250 MG of Methamphetamine (actual)"). Instead, the district court imposed a sentence of 150 months, based on a base offense level of 34, a two-level upward enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm—based on judicial fact-finding—and a three-point reduction for acceptance of responsibility (for a final offense level of 33). This sentence far exceeded the maximum sentence that the district judge could have imposed under the Guidelines on the basis of facts admitted by Ameline. Thus, as in *Booker*, Ameline's sentence violated his Sixth Amendment rights as construed by *Apprendi* and *Blakely*.

## III.

Because Ameline did not object to his sentence on the ground that the Sentencing Guidelines or the procedures used to determine the material sentencing facts were unconstitu-

---

beyond a reasonable doubt, a defendant can plead guilty to the elements of the offense without admitting the drug quantity allegation." *United States v. Thomas*, 355 F.3d 1191, 1198 (9th Cir. 2004). Here, neither the Superseding Information nor the Indictment charged a specific drug quantity. Nonetheless, at the change of plea hearing the government proffered that Ameline agreed to distribute between one and one and a half kilograms of methamphetamine. Ameline vigorously disputed this characterization and admitted to only a detectable amount of methamphetamine at the plea colloquy. In these circumstances, Ameline's guilty plea did not constitute an admission of the amount proffered by the government.

[5]With one prior conviction in 1997 for "Issuing a Bad Check," Ameline was in criminal history Category I.

tional under *Apprendi*, or on the ground that the material sentencing facts were not alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt, we review for plain error. *See United States v. Cotton*, 535 U.S. 625, 628-29 (2002); *cf. Booker*, 125 S. Ct. at 769.

> [B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.

*Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (citations and quotation marks omitted); *see also United States v. Recio*, 371 F.3d 1093, 1100 (9th Cir. 2004).

## A.

"Deviation from a legal rule is 'error' unless the rule has been waived." *United States v. Olano*, 507 U.S. 725, 732-33 (1993). As discussed, Ameline's Sixth Amendment rights as construed in *Blakely* and *Booker* were violated. This constituted error.

## B.

**[4]** In determining whether the error was plain, the Court has explained that it is sufficient that the error is clear under the law as it exists at the time of appeal. *See Johnson*, 520 U.S. at 468 ("[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration."). It is clear after *Blakely* and *Booker* that, given the mandatory nature of the Guidelines, increasing Ameline's punishment based on facts not admitted by him or determined

by a jury beyond a reasonable doubt was contrary to his Sixth Amendment rights.

## C.

**[5]** For an error to affect "substantial rights," "the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. There can be little doubt that the constitutional error in sentencing Ameline affected Ameline's substantial rights. Ameline was deprived of his right to have a jury find beyond a reasonable doubt the quantity of drugs attributable to him. Here, as noted above, and as in *Booker*, the district court's sentence far exceeded the maximum sentence under the Guidelines that was supported by Ameline's admission that his offense involved only a "detectable quantity" of methamphetamine. Without additional factual findings by the court, Ameline faced a maximum sentence of sixteen months. Instead, he received a sentence of 150 months. Under these circumstances, we have no doubt that the constitutional error affected Ameline's substantial rights.

## D.

Finally, the error affected the fairness of Ameline's proceedings. In discussing the fairness of the result in *Blakely*, the Court stated:

> Any evaluation of *Apprendi*'s "fairness" to criminal defendants must compare it with the regime it replaced, in which a defendant, with no warning in either his indictment or plea, would routinely see his maximum potential sentence balloon from as little as five years to as much as life imprisonment, see 21 U.S.C. §§ 841(b)(1)(A), (D), based not on facts proved to his peers beyond a reasonable doubt, but on facts extracted after trial from a report compiled

by a probation officer who the judge thinks more likely got it right than got it wrong.

*Blakely*, 124 S. Ct. at 2542.

This is precisely what happened to Ameline. Although Ameline admitted to only a detectable amount of methamphetamine, and vigorously challenged the reliability of the hearsay evidence presented in the PSR to increase his base offense level, the district court, constrained by the Guidelines, imposed a sentence that violated Ameline's Sixth Amendment rights. As the Fourth Circuit recently held, "to leave standing this sentence imposed under the mandatory guideline regime, we have no doubt, is to place in jeopardy the fairness, integrity or public reputation of judicial proceedings." *United States v. Hughes*, ___ F.3d ___, 2005 WL 147059, at \*5 (4th Cir. Jan. 24, 2005) (quotation marks omitted).

**[6]** Thus, we hold that the district court's imposition of a 150-month sentence under the Sentencing Guidelines in violation of Ameline's Sixth Amendment rights as construed by *Blakely* and *Booker* was plain error. We further hold that remand is necessary because letting Ameline's sentence stand "simply because it may happen to fall within the range of reasonableness unquestionably impugns the fairness, integrity, or public reputation of judicial proceedings." *Id.* at \*5 n.8. "Moreover, declining to notice the error on the basis that the sentence actually imposed is reasonable would be tantamount to performing the sentencing function ourselves." *Id.* Accordingly, it is the *truly* exceptional case that will not require remand for resentencing under the new advisory guideline regime. This is not such a case. The violation of Ameline's Sixth Amendment rights therefore warrants vacating his sentence and remanding for resentencing.

### E.

Upon remand, the district court must resentence Ameline in accordance with the Court's remedial holding in *Booker*. In

the majority remedial opinion by Justice Breyer, the Court considered, "as a matter of severability analysis," whether the Guidelines as a *whole* were no longer applicable "such that the sentencing court must exercise its discretion to sentence the defendant within the maximum and minimum set by statute." *Booker*, 125 S. Ct. at 756. The Court, however, ultimately determined that it could address the Sixth Amendment violation by severing 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act "that makes the Guidelines mandatory," and severing one other provision, 18 U.S.C. § 3742(e), "which depends upon the Guidelines' mandatory nature." *Id*. at 756-57. With these modifications the Court determined that the Sentencing Reform Act "makes the Guidelines effectively advisory," *id.* at 757, but leaves the remainder of the Act intact to "function[ ] independently." *Id*. at 764. Under the Act as modified, "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id*. at 767.

Thus, under the post-*Booker* discretionary sentencing regime, the advisory guideline range is only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence. For instance, the Sentencing Guidelines' limitations on the factors a court may consider in sentencing—*e.g.*, the impermissible grounds for departure set forth in § 5K2.0(d)—no longer constrain the court's discretion in fashioning a sentence within the statutory range.

Sentencing discretion is not boundless, however; it must be tethered to the congressional goals of sentencing as reflected in the Sentencing Reform Act. *See* 18 U.S.C. § 3553(a). To this end, "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of the Act] set forth in [18 U.S.C. § 3553(a)(2)]." *Id*. Accordingly, in addition to the advisory guideline range, a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant"

as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training and medical care. 18 U.S.C. § 3553(a)(1)-(2). In addition, the court must consider the relevant Sentencing Commission policy statements and the need to avoid unwarranted sentencing disparities and to provide restitution to victims. 18 U.S.C. § 3553(a)(5)-(7).

**[7]** In sum, in exercising discretion, district judges must consider, along with the advisory guideline range, the goals and purposes of sentencing as reflected in § 3553(a) and fashion an appropriate sentence that furthers these objectives. To facilitate meaningful appellate review, the court must also provide a reasoned explanation for its sentencing decision. *See* 18 U.S.C. § 3553(c).

## IV.

To provide guidance to the district court upon resentencing, and because the court must determine the advisory guideline sentencing range for Ameline's offense of conviction before imposing a sentence, we address one of Ameline's challenges to his initial sentence that is likely to arise on remand.[6] As noted, Ameline initially challenged his sentence on the ground that the district court incorrectly placed the burden on him of disproving the drug quantity determinations in the PSR. As we explain, the procedure employed by the district court was inconsistent with the basic sentencing procedures that we have held applicable to sentencing determinations under the Sentencing Guidelines and Federal Rule of Criminal Procedure 32. These baseline rules, which ensure fairness and integrity in the sentencing process, remain in force in the post-*Booker* sentencing regime.

---

[6]Ameline also argued that the district court's drug quantity finding was clearly erroneous because it was based on multiple layers of unreliable hearsay evidence. Because the district court must resentence Ameline consistent with *Booker*, we do not address this issue.

We previously held in *United States v. Howard* that the government "bear[s] the burden of proof for any fact that the sentencing court would find necessary to determine the base offense level." 894 F.2d 1085, 1090 (9th Cir. 1990); *see also United States v. Charlesworth*, 217 F.3d 1155, 1158 (9th Cir. 2000).[7] In so holding, we explained: "Since the government is initially invoking the court's power to incarcerate a person, it should bear the burden of proving the facts necessary to establish the base offense level." *Howard*, 894 F.2d at 1090. We also held that "the government should bear the burden of proof when it seeks to raise the offense level and that the defendant should bear the burden of proof when the defendant seeks to lower the offense level." *Id*. By treating the factual statements in the PSR as presumptively accurate, and placing the burden on Ameline to disprove them, the district court relieved the government of its sentencing burden and required Ameline to establish the factual basis for a lower base offense level than the one recommended in the PSR. This was error.

[8] Although the PSR is essential to the sentencing process, there is nothing sacrosanct about the information contained in the report. Because Ameline raised specific timely objections to the methamphetamine quantity determination in the PSR, it is the government's burden to produce reliable evidence to establish the factual predicate for the court's base offense level determination. It may not simply rely on the factual statements in the PSR.

---

[7]In *Howard*, we also held that factual disputes under the Sentencing Guidelines should be decided by a preponderance of the evidence. 894 F.2d at 1090. We further have held that, in certain circumstances, the applicable burden of proof at sentencing may be clear and convincing evidence, *see United States v. Johansson*, 249 F.3d 848, 853-54 (9th Cir. 2001), or even reasonable doubt. *See United States v. Thomas*, 355 F.3d 1191, 1202 (9th Cir. 2004). Whether the *Booker* majority remedial opinion affects the standard of proof articulated in these cases is an issue we need not address at this time.

This conclusion follows from the interplay between Federal Rule of Criminal Procedure 32(i)(3)(B) and the rule we adopted in *Howard* that the party seeking to adjust the offense level bears the burden of proof. This conclusion also properly accommodates the due process concern that a defendant be sentenced only on the basis of reliable information. *See United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993); *see also United States v. Navarro*, 979 F.2d 786, 788 (9th Cir. 1992) ("To sentence Navarro on the basis of all the drugs sold, the court had to find that the government had met this burden with regard to each transaction."). When a defendant makes a timely specific objection to the factual accuracy of an assertion in the PSR, Rule 32(i)(3)(B), even after *Booker*, requires the district court to resolve the factual dispute.

Although the district court allowed Ameline to call witnesses to dispute the factual statements in the PSR and made relevant factual findings, by treating the factual statements in the PSR as presumptively accurate, the court erroneously placed the ultimate burden of proof on Ameline. Under the district court's procedure, Ameline was required to prove a negative and to bear the risk of his failure of proof. Although the final Sentencing Guidelines range is nonbinding under *Booker*, there are serious sentencing ramifications to the district court's factual findings. The district court's drug quantity determination will directly affect the base offense level, the starting point for determining the applicable guideline range for an offense under 21 U.S.C. § 841(a)(1). *See* U.S.S.G. § 2D1.1(c).

In light of the fact that Ameline presented numerous witnesses who disputed the PSR's base offense level of 32, all of whom raised serious questions regarding the total quantity of drugs attributable to Ameline, the district court must resolve any material factual dispute consistent with the basic procedures outlined above before it exercises its sentencing discretion and imposes a sentence in conformity with *Booker*.

## V.

In conclusion, we hold that Ameline's sentence imposed under the mandatory Sentencing Guidelines violated his Sixth Amendment rights as construed by *Blakely* and *Booker* and this violation constituted plain error. Accordingly, we remand for resentencing in light of *Booker* and consistent with the views expressed in this opinion.

**VACATED** and **REMANDED**.

No petition for rehearing will be entertained and the mandate shall issue forthwith.