TJOFLAT, Circuit Judge,
dissenting from the denial of rehearing en banc:
A jury in the United States District Court for the Middle District of Florida convicted Vladimir Rodriguez for distributing, or possessing with the intent to distribute, a “detectable amount” of MDMA, also known as ecstasy, in violation of 21 U.S.C. § 841(a)(1), and for conspiring to do the same, in violation of 21 U.S.C. § 846. At sentencing, the district court initially set Rodriguez’s base offense level at 30 based on its own determination that the offense involved 30,000 ecstasy tablets. It then added two levels because Rodriguez testified falsely, under oath during his trial that he had no involvement in the offenses for which he was convicted, U.S.S.G. § 3C1.1, and awarded a two-level reduction based on Rodriguez’s minor role in the offense, U.S.S.G. § 3B1.2(b). Because Rodriguez had no prior convictions, his guideline sentencing range was 97 to 121 months in prison. The court imposed a sentence of 109 months in prison.
After Rodriguez was sentenced, the Supreme Court held that the Federal Sentencing Guidelines violate the Sixth Amendment right to a trial by jury to the extent that they permit a judge to increase a defendant’s sentence based on facts that are neither found by the jury nor admitted by the defendant. United States v. Booker, — U.S. —, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005). To remedy this constitutional defect, the Court declared “the Guidelines effectively advisory.” Id. at 757. As a result, a sentencing court must still “consider Guidelines ranges,” but it may “tailor the sentence in light of other statutory concerns as well.” Id. (citing 18 U.S.C. § 3553(a)). We. review sentences imposed under this new model for “reasonableness” only. Id. at 765-67; see also McReynolds v. United States, 397 F.3d 479, 481 (7th Cir.2005) (“District judges must [apply the Sentencing Guidelines] as guidelines, with appellate reyiew to determine whether that task has been carried out reasonably.”).
Because Rodriguez did not raise a constitutional objection at sentencing, the *1282 Booker claim he raises on appeal must pass the “ ‘plain-error’ test.” Booker, 125 S.Ct. at 769. In general, this requires the defendant to show that “(1) an error occurred, (2) the error was plain, (3) the eiTor affected substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.” United States v. Duncan, 400 F.3d 1297, 1301 (11th Cir.2005) (citing United States v. Olano, 507 U.S. 725, 732-36, 113 S.Ct. 1770, 1777-79, 123 L.Ed.2d 508 (1993)). Under Booker, it is clear that error occurred, and that error is now plain. The panel holds, however, that Rodriguez fails the plain-error test because he cannot show that his substantial rights were affected. The panel does not suggest that Rodriguez’s substantial rights were not affected; rather, it rejects his claim because “[w]e just don’t know” what sentence he would have received if the district court had treated the Guidelines as advisory only. United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir.2005).
The panel’s error is its failure to recognize that Booker error of a constitutional dimension is one of a “very limited class” of “structural errors.” Johnson v. United States, 520 U.S. 461, 468-69, 117 S.Ct. 1544, 1549-50, 137 L.Ed.2d 718 (1997).[1] “Each of these constitutional deprivations is a ... structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.” Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). Because structural error affects the framework of the trial itself, its “consequences ... are necessarily unquantifiable and indeterminate.” Sullivan v. Louisiana, 508 U.S. 275, 281-82, 113 S.Ct. 2078, 2083, 124 L.Ed.2d 182 (1993).[2] As such, structural errors “defy analysis by ‘harmless-error’ standards” and are per se reversible if an objection is made at trial. Fulminante, 499 U.S. at 309, 111 S.Ct. at 1265.
A harmless error is simply “[a]ny error ... that does not affect substantial rights.” Fed.R.Crim.P. 52(a). As such, the Supreme Court has said that harmless-error analysis and the substantial-rights prong of the plain-error test essentially “require[ ] the same kind of inquiry.” Olano, 507 U.S. at 734, 113 S.Ct. at 1778 (stating that there is only “one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice” under the plain-error test). Therefore, if structural errors “defy analysis” by harmless-error standards, they must also defy analysis under the third prong of the plain-error test. It would make no sense to say that the same prejudice inquiry that is impractical as harmless-error analysis is somehow practical under the plain-error test. Structural errors are not per se reversible in the plain-error context because a defendant who fails to object at trial must still satisfy the second and *1283 fourth prongs of the plain-error test. But it is clear that it makes no more sense to require a case-specific showing of prejudice under the plain-error test than it does under the harmless-error standard.
A Booker error that involves an actual Sixth Amendment violation is a structural error. Booker dramatically alters the very “framework within which [sentencing] proceeds,” Fulminante, 499 U.S. at 310, 111 S.Ct. at 1265, and the effect of Booker error is “necessarily unquantifiable and indeterminate,” Sullivan, 508 U.S. at 281-82, 113 S.Ct. at 2083. Moreover, the logical implication of the concluding paragraph of the Booker remedial opinion is that “cases ... involving a Sixth Amendment violation,” Booker, 125 S.Ct. at 769, are not subject to the harmless-error doctrine and, therefore, must involve structural error. See infra Part I. For these reasons, I disagree with the panel opinion in this case.
The panel’s error is a serious one and warrants rehearing en banc. The Supreme Court instructed that “we must apply [BookeFs] holdings — both the Sixth Amendment holding and [its] remedial interpretation of the Sentencing Act — to all cases on direct review.” Booker, 125 S.Ct. at 769. If, however, we require defendants like Rodriguez to prove an effect on them substantial rights, applying Booker will be a meaningless formality in all but the rarest of cases subject to plain-error analysis.[3] This is a sizable class of defendants. Until the Supreme Court’s decision last June in Blakely, v. Washington, — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the constitutionality of the Federal Sentencing Guidelines was beyond question in this circuit and every other. See id. at 2547 n. 1 (O’Connor, J., dissenting) (collecting cases); United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir.2001) (en banc) (“Apprendi does not apply to judge-made determinations pursuant to. the Sentencing Guidelines.”). Defendants sentenced prior to Blakely had no reason to raise a constitutional objection to their sentence because such an objection would have appeared futile. As such, the number of cases impacted by the panel’s deci-sión is significant.
Because the panel’s application, of the plain-error test is fundamentally flawed,-[4] and because this question is of substantial importance, I dissent from the denial of rehearing en banc. Part I of this opinion explains why Booker itself requires that we treat Booker errors of a constitutional dimension as structural errors. Part II briefly describes how dramatically Booker has altered federal sentencing and why this supports the conclusion that Booker errors involving an actual violation of the Sixth Amendment are structural. Part III explains how the plain-error test applies to structural errors. Part IV responds to Judge Carnes’s opinion concurring in the denial of rehearing en banc. Part V concludes.
I.
At the outset, it is important to understand that there are two different types of Booker error: “there is a constitutional error (based in the Sixth Amendment) when a judge enhances a sentence in a mandatory sentencing system based on *1284 facts not admitted by the defendant or proved to a jury beyond a reasonable doubt,” and there is “a statutory error (based in the severability principles) when a federal judge applied the guidelines as mandatory rather than advisory.” Douglas A. Berman, Sorting through the Circuit circus, Sentencing Law and Policy, at http://sentencing.typepad.com/sentencing _law_ancLpolicy/2005/02/sorting_ through.html (Feb.14, 2005). “Notably, only some pr e-Booker sentencings involved constitutional error, since not every pre-Booker guideline sentence depended upon judicial fact-finding. But every pre-Booker sentencing involved statutory error, since every pr e-Booker guideline sentence was imposed based on the assumption that the guidelines were mandatory....” Id. The instant case involves both constitutional and statutory error. See Rodriguez, 398 F.3d at 1298 (“Under a mandatory guidelines system, Rodriguez’s sentence was enhanced as a result of findings made by the judge that went beyond the facts admitted by the defendant or found by the jury.”). Therefore, the precise question presented is whether, in a case involving both constitutional and statutory error under Booker, the defendant must establish that his substantial rights were affected — that is, “a reasonable probability of a different result if the guidelines had been applied” as required by Booker (Rodriguez, 398 F.3d at 1301)—in order to pass the plain-error test.
The distinction between Booker constitutional errors and Booker statutory errors is significant because the Booker Court indicated that the two must be treated differently. In Booker, the Court stated that “in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine.” 125 S.Ct. at 769.[5] If all Booker errors were ordinary trial errors, this statement would be superfluous because it is well-settled that the harmless-error doctrine applies to all ordinary trial errors — even constitutional ones. Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Thus, there must be something more to this statement. The logical implication is that “cases ... involving a Sixth Amendment violation” are not subject to harmless-error review. In other words, Booker constitutional error is structural error for only structural errors defy harmless-error analysis. Fulminante, 499 U.S. at 306-10, 111 S.Ct. at 1263-65.
Intuitively, it may seem odd to say that Booker constitutional errors are structural while Booker statutory errors are not. After all, the “framework within which [sentencing] proceeds,” id. at 310, 111 S.Ct. at 1265, has changed because the Guidelines are no longer mandatory, and this development applies fully even if the trial court made no extra-verdict (or extra-plea) findings of fact. Moreover, in general, the effects of statutory errors are likely to be just as “unquantifiable and indeterminate,” Sullivan, 508 U.S. at 281-82, 113 S.Ct. at 2083, as the effects of constitutional errors. Even so, the distinction is valid. To begin with, it has clear support in our own precedent. In Sanchez, we specifically stated that “[t]here is no separate category of structural error apart from constitutional error. The only question is whether any *1285 constitutional errors ... rise to the level of structural error.” 269 F.3d at 1272 n. 41.[6] This statement from Sanchez finds implicit support in a number of Supreme Court cases.[7] It also seems (at least) reasonable to say that if a defendant’s Sixth Amendment right to a trial by jury was not actually violated, we should not presume *1286 prejudice. In any event, it is enough to say that the distinction is one that Booker itself implies.
II.
Booker’s- implication that the constitutional error it corrects is structural is fully consistent with the Supreme Court’s structural error cases. As noted above, Fulminante defines structural error as a “constitutional deprivation[ ] ... affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.” 499 U.S. at 310, 111 S.Ct. at 1265. It is difficult to overstate the extent to which Booker affects the federal sentencing framework.
The starting point under both the old model (pre-Booker) and new model (post-Booker) of federal sentencing is 18 U.S.C. § 3553(a), which states that
[t]he .court shall impose a sentence sufficient, but not greater than necessary, ... (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
18 U.S.C. § 3553(a)(2). In other words, the underlying goals of the statute and the Guidelines are “retribution, general deterrence, incapacitation, and rehabilitation.” United States v. Mogel, 956 F.2d 1555, 1558 n. 2 (11th Cir.1992). In selecting an appropriate sentence, the sentencing court must also consider “the nature and circumstances of the offense and the history and characteristics of the defendant”; “the kinds of sentences available”; all relevant guidelines and policy statements issued by the Sentencing Commission; “the need to avoid unwarranted sentence disparities among defendants with similar records who have been found, guilty of similar conduct; and the need to provide restitution to any victims of the offense.” 18 U.S.C. § 3553(a)(1), (3)-(7).
Under' the old model, the district court was bound to sentence the defendant within the applicable guideline range unless it determined that
an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines ... should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court [could] consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.
18 U.S.C. § 3553(b)(1). Stated differently, the only way the defendant was going to get a downward departure under the old model was by showing that his case was not within the “heartland of typical cases.” Koon v. United States, 518 U.S. 81, 94, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996). This was a difficult task. To start with, “the Sentencing Commission has already considered, and the Sentencing Guidelines have already factored in, many if not all circumstances that are arguably relevant to criminal sentencing .... The Guidelines are, as Congress intended them to be, comprehensive .... ” Kate Stith & Jose A. Cabranes, Fear of Judging: Sentencing Guidelines in the Federal Courts 102 (1998). Thus, it was quite unlikely that *1287 the defendant would be able to identify a circumstance that the Commission had altogether failed to consider.[8] And once the sentencing court determined that the Commission had taken a circumstance into account, the defendant could only argue that the circumstance was present in his case to some atypical degree. This is because the Commission’s substantive judgment as to the significance of the circumstance in a heartland case was unassailable.
The comprehensiveness of the Guidelines and the invulnerability of the policy judgments on which they rest essentially rendered any evidence a defendant might present regarding the need for “adequate deterrence” or the need for “just punishment” irrelevant under the old model. The reason is simply that although reasonable minds may differ as to the level of punishment needed to adequately deter or justly punish a particular offense, once the Commission announced its views on the subject, it was difficult to argue that any particular case was atypical or outside the heartland with respect to these issues.[9] Rather, a party seeking a departure generally accepted his base offense level as a starting point and then attempted to show that the case was atypical because it was committed in an unusual manner or for some unanticipated and unaccounted-for reason warranted a downward departure.
Because the Guidelines are merely advisory under the new model, the defendant is no longer limited to arguing that his case is somehow atypical. Such arguments, of course, remain viable, but under the new model the defendant can also simply concede that his case is typical and challenge the wisdom of the Commission’s judgment regarding the appropriate punishment in heartland cases.[10] That is, the defendant may simply argue that the ap *1288 plicable guideline sentence is “greater than necessary” to achieve the purposes of the Sentencing Reform Act. 18 U.S.C. § 3558(a). “[T]he Guidelines ... are the product of policy decisions by the Sen-tending Commission .... If those policy decisions are no longer mandatory, the sentencing judge is free to disagree with them.” Booker, 125 S.Ct. at 790 n. 3 (Scalia, J., dissenting).[11]
*1289 Subject to review for reasonableness, district judges are now free to apply their “own perceptions of just punishment, deterrence, and protection of the public even when these differ from the perceptions of the Commission members who drew up the Guidelines.” Id. at 790. Although “judges must still consider the sentencing range contained in the Guidelines, ... that range is now nothing more than a suggestion that may or may not be persuasive ... when weighed against the numerous other considerations listed in [§ 3553(a)].” Id. at 787 (Stevens, J., dissenting). Indeed, as one district judge has already observed,
the remedial majority in Booker [] directs] courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore. For example, under § 3553(a)(1) a sentencing court must consider the “history and characteristics of the defendant.” But under the guidelines, courts are generally forbidden to consider the defendant’s age, his education and vocational skills, his mental and emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions, and his lack of guidance as a youth. The guidelines’ prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the “history and characteristics” of the defendant.
United States v. Ranum, 353 F.Supp.2d 984, 986 (E.D.Wis.2005) (citations omitted). Thus, mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases[12] are now potentially relevant in every case.
*1290 That constitutional Booker errors are “constitutional deprivations ... affecting the framework within which [sentencing] proceeds,” Fulminante, 499 U.S. at 310, 111 S.Ct. at 1265, is thus inescapable. It is equally clear that their “consequences ... are necessarily unquantifíable and indeterminate.” Sullivan, 508 U.S. at 282, 113 S.Ct. at 2083. Indeed, the panel recognizes this when it “ask[ed] whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion”:
The obvious answer is that we don’t know. If the district court judge in this case had the liberty of increasing or decreasing Rodriguez’s sentence above or below the guidelines range, he might have given Rodriguez a longer sentence, or he might have given a shorter sentence, or he might have given the same sentence. The record provides no reason to believe any result is more likely than the other. We just don’t know.
Rodriguez, 398 F.3d at 1301. I do not see how we can dismiss Rodriguez’s Sixth Amendment claim on the ground that “[t]he record provides no reason to believe” that he would have received a lesser sentence under the new model. Or, as the Seventh Circuit put it, I “cannot fathom why the Eleventh Circuit wants to condemn some unknown fraction of criminal defendants to serve an illegal sentence.” United States v. Paladino, 401 F.3d 471, 484 (7th Cir.2005).
Before adopting such a rule, we should at least consider what in the record might have “provide[d] ... reason to believe” that a lesser sentence would have been imposed had Rodriguez been sentenced under the new model. At the sentencing hearing, the defendant might have argued that his guideline sentence was “greater than necessary” to achieve the sentencing purposes identified in § 3553(a). More specifically, the defendant might have presented the district judge with law-enforcement data tending to show that the need for general deterrence is low with respect to his particular offense and in his particular community, and that his guideline range is therefore unnecessarily high. Alternatively, the defendant might have argued that his personal history or circumstances somehow render him less culpable or less likely to commit future crimes than the Guidelines suggest. Of course, none of this type of evidence or argument is likely to be found in the record of a pre-Booker hearing.[13]
Any attempt to assess prejudice resulting from Booker error is, therefore, pure guesswork. In cases involving statutory error only, it is necessary guesswork, for the Supreme Court has clearly indicated that the harmless-error and plain-error *1291 doctrines apply to such cases. Again, this is reasonable given that these defendants have suffered no actual constitutional deprivation. But when, as in this case, the Booker error is constitutional, the fact that its effect is wholly “unquantifiable and indeterminate,” Sullivan, 508 U.S. at 282, 113 S.Ct. at 2083, reinforces its structural nature. In this sense, Booker error is similar to other types of error that fit within the very limited class of structural errors. See supra note 1 (listing structural errors). It is, for example, similar to Gideon error in that just as we cannot know what evidence a capable attorney might have uncovered, what favorable testimony he might have elicited, or what persuasive arguments he might have made, we also cannot know what evidence or argument a defendant might have presented had he been sentenced under the new sentencing model. It is also similar to an erroneous reasonable-doubt instruction, for just as such a misinstruetion “vitiates all the jury’s findings” so that an appellate court can do no more than “engage in pure speculation — its view of what a reasonable jury would have done,” Sullivan, 508 U.S. at 281, 113 S.Ct. at 2082—all we can do is speculate as to what a reasonable sentencing judge might have done under the new model. Indeed, we are in one sense worse off because a court assessing an erroneous reasonable-doubt instruction can at least assume that the remaining record was not affected by the instruction error, whereas I think we must assume, if anything, that a defendant such as Rodriguez would have done something different under the new model.
I am thus firmly convinced that Booker constitutional error is structural error. In the next Part, I explain the significance of this conclusion in the plain-error context.
III.
It is clear that structural errors are not subject to harmless-error analysis and therefore always require reversal if a timely objection is made. Fulminante, 499 U.S. at 309-10, 111 S.Ct. at 1264-65. Rodriguez did not raise a constitutional objection to his sentence, however, so the question here is how structural errors are to be treated under the plain-error test.[14] The Supreme Court has never squarely addressed this issue, but on several occasions it has suggested that structural errors are not subject to the substantial-rights prong of the plain-error test. See United States v. Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, 2339-40, 159 L.Ed.2d 157 (2004); United States v. Cotton, 535 U.S. 625, 632-33, 122 S.Ct. 1781, 1785-86, 152 L.Ed.2d 860 (2002); Johnson, 520 U.S. at 468-69, 117 S.Ct. at 1549-50; Olano, 507 U.S. at 736, 113 S.Ct. at 1778. Similar statements can be found in a number of our opinions, see, e.g., McCoy v. United States, 266 F.3d 1245, 1252 n. 9 (11th Cir.2001) (“Apprendi error is a constitutional error, subject to plain- or harmless-error. review, and does not create a structural error.”); United States v. Smith, 240 F.3d 927, 930 (11th Cir.2001) (“[Fjailure to submit the issue of drug quantity to the jury did not affect Defendants’ substantial rights. Apprendi did not create a structural error that would require per se re *1292 versal.”); United States v. Frost, 139 F.3d 856, 859 (11th Cir.1998) (discussing Johnson, supra), as well as those of other circuits, see, e.g., United States v. Bruno, 383 F.3d 65, 79 (2d Cir.2004); United States v. Adams, 252 F.3d 276, 285 & n. 6 (3d Cir.2001); United States v. Wilson, 240 F.3d 39, 44 (D.C.Cir.2001). Moreover, those circuits that have squarely addressed this issue have held that structural errors are not subject to substantial-rights analysis under the plain-error test — or, stated differently, are presumed to have affected the defendant’s substantial rights. See United States v. Recio, 371 F.3d 1093, 1103 (9th Cir.2004); United States v. David, 83 F.3d 638, 646-47 (4th Cir.1996).
That structural errors should not be subject to substantial-rights analysis seems obvious to me. Indeed, Federal Rule of Criminal Procedure 52, read in light of the Supreme Court’s structural-error cases, compels this conclusion. Rule 52(a) defines harmless error as “[a]ny error ... that does not affect substantial rights.” And Rule 52(b) says that we may correct “[a] plain error that affects substantial rights.” Thus, when the Supreme Court said that structural errors “defy analysis by ‘harmless-error’ standards,” Fulminante, 499 U.S. at 309, 111 S.Ct. at 1265, it meant that structural errors “defy” substantial-rights analysis, for substantial-rights analysis and harmless-error analysis are one in the same. Olano, 507 U.S. at 734, 113 S.Ct. at 1778 (stating that the only difference between the two is that the defendant bears the burden of persuasion under the former and the Government under the latter). I cannot imagine how an error would “defy” substantial-rights analysis under Rule 52(a) but not under Rule 52(b). Therefore, structural errors cannot be subject to the third prong of the plain-error test. This does not mean that structural errors are per se reversible under the plain-error standard, see Johnson, 520 U.S. at 466, 117 S.Ct. at 1548; Recio, 371 F.3d at 1100 n. 4; David, 83 F.3d at 647-48, but it does mean that we cannot affirm simply because the defendant is unable show that his substantial rights were affected.
Because structural errors are not subject to substantial-rights analysis, the panel’s reliance on Jones v. United States, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), is misplaced. In Jones, the defendant argued that the jury was erroneously “led to believe that if it could not reach a unanimous sentence recommendation he would receive a judge-imposed sentence less severe than life imprisonment.” Id. at 384, 119 S.Ct. at 2100. The Court first held that no error was committed. Id. at 389-90, 119 S.Ct. at 2102. It then explained that “[e]ven assuming, arguendo, that an error occurred (and that it was plain),” and further
assuming that the jurors were confused over the consequences of deadlock, petitioner cannot show the confusion necessarily worked to his detriment. It is just as likely that the jurors, loath to recommend a lesser sentence, would have compromised on a sentence of life imprisonment as on a death sentence. Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights.
Id. at 394-95, 119 S.Ct. at 2105. The dissent in Jones responded only that such uncertainty should satisfy the substantial-rights prong of the plain-error test: “I would demur ... to that position. It should suffice that the potential to confuse existed, i.e., that the instructions could have tilted the jury toward death.” Id. at *1293 416, 119 S.Ct. at 2115-16 (Ginsburg, J., dissenting). In other words, the dissent argued only that the defendant had made a sufficient showing that the error affected his substantial rights, not that he was not required to do so. Neither the majority nor the dissent ever mentioned the concept of “structural error.” Nor, for that matter, did any of the parties in Jones, either in the briefs or at oral argument.
It is clear that Jones did not involve structural error and, therefore, does not resolve this case. Instead, Jones announces a general rule of thumb that the defendant loses if we can only speculate as to whether he was prejudiced by an ordinary trial error to which did not object. Jones would not apply if, for example, the judge forgot to give a reasonable-doubt instruction and the defendant did not object; that is, we could not say, “Well, the defendant did not object, and we just don’t know what, if any, prejudice this omission caused him, so he fails the plain-error test.” Because Booker constitutional error is also structural error, Jones does not apply here either.
IV.
As Judge Carnes says, no federal court has explicitly held, as I would, that Booker constitutional error is structural error. Ante, at 1262 -64. While technically accurate, this statement is at least a little misleading. After all, the Third, Fourth, and Sixth Circuits appear to think that every Booker constitutional error affects substantial rights, which is really all that calling such error “structural” means in the plain-error context. See, e.g., United States v. Spivey, 2005 WL 647345, at *5 (3d Cir. Mar.22, 2005); United States v. Hughes, 401 F.3d 540, 547-55 (4th Cir.2005); United States v. Oliver, 397 F.3d 369, 379-80 (6th Cir.2005). The Ninth Circuit also took this position initially, though it has since granted rehearing en banc. United States v. Ameline, 400 F.3d 646, 654 (9th Cir.2005), reh’g en banc granted, 401 F.3d 1007 (9th Cir.2005). Indeed, the only real difference between these opinions and mine is that mine offers a more satisfactory rationale for its result. See infra note 19. In addition, the Eighth is still yet to weigh in on this issue with a significant opinion, and the Tenth Circuit has addressed only statutory Booker error. See United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir.2005) (en banc) (“This case presents us with a non-constitutional Booker error.”). Thus, I do not believe that my opinion is nearly so radical as Judge Carnes suggests.
In Booker, the Court instructed that “in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine.” Booker, 125 S.Ct. at 769 (emphasis added). Judge Carnes fairly summarizes what I infer from this instruction: 1) the harmless-error doctrine does not apply to “cases ... involving a Sixth Amendment violation”; 2) ergo, Booker errors “involving a Sixth Amendment violation” — i. e., constitutional Booker errors — must be structural errors, for only structural errors defy harmless-error analysis; and, 3) ergo, all constitutional Booker errors affect substantial rights for plain-error purposes. See ante, at 1264-65. Judge Carnes says, “Never has so much been inferred from so little.” Id. Propositions 2 and 3 in this chain are, however, relatively uncontroversial, and I do not understand Judge Carnes to disagree with them — that is, it is clear that only structural errors defy harmless-error analysis *1294 and that structural errors always affect substantial rights. As such, Judge Carnes really only takes issue with proposition 1. I believe that I make a sound case in Part I that the Court’s statement regarding cases not involving Sixth Amendment error would be superfluous if it does not mean what I conclude it means, but my main point here is that the extent of my inference should not be overstated: propositions 2 and 3 follow logically if proposition 1 is accepted.
Judge Carnes then argues that “[t]here are all kinds of problems with [my] theory.” Ante, at 1265. He says that it contradicts the Booker Court’s expectation that we “apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the ‘plain-error’ test.” Booker, 125 S.Ct. at 769. This simply is not so. In cases involving only statutory error, Judge Carnes and I would, I think, apply the plain-error test in much the same way. And even in cases involving constitutional error, I would require the defendant to satisfy the fourth prong of the test.[15] Thus, my approach is in no sense in con *1295 flict with the Supreme Court’s expectation regarding the applicability of the plain-error test. For the same reasons, it is entirely consistent with the Court’s statement that not “every appeal will lead to a new sentencing hearing.” Id.[16]
Judge Carnes next attacks my distinction between constitutional errors and statutory errors, arguing that it lacks support “in law or logic.” Ante, at 1267. Apparently, he thinks that there is no difference between a case in which the defendant’s constitutional rights were violated and a case in which they were not. I think that there is. The Supreme Court seems to think so, too. See Booker, 125 S.Ct. at 769 (“[W]e must apply today’s holdings—both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act — to all cases on direct review. That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. ... [And] in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine.” (emphasis added and citations omitted)). Stated differently, statutory Booker errors are merely a byproduct of Booker's “unnecessarily broad remedy,” id. at 788 (Stevens, J., dissenting), whereas constitutional Booker errors are violations of the Sixth Amendment requirement that, “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362- *1296 63.[17] Moreover, as Judge Carnes concedes, see ante, at 1267 n. 4, this court has already stated once that only constitutional errors can be structural errors. See Sanchez, 269 F.3d at 1272 n. 41.[18]
Judge Carnes then relies on Sanchez, arguing that its holding “that Apprendi error is not structural answers the question of whether Booker error is structural, because Booker is an application of Apprendi once removed.” Ante, at 1268. This statement is obviously wrong. Because the Guidelines were still binding post-Apprendi, a court reviewing Appren-di error could simply determine whether the evidence supporting any judicial fact-finding was so clear that failure to submit the issue to a jury was harmless; if it was, then the error was harmless precisely because the Guidelines were still binding. But post-Booker, even if the evidence supporting all facts found by the judge is overwhelming, we can still only guess as to what sentence the judge might have imposed under an advisory-guideline regime. We, therefore, cannot know whether the error affected the defendant’s substantial rights. This is why Booker constitutional error is structural even though Apprendi error was not. Unlike Booker, Apprendi did not fundamentally alter the sentencing framework, and the effects of Apprendi error were just as determinable as the effects of any other sort of trial error. Indeed, a panel of this court, in an opinion Judge Carnes joined, has already observed that “Blakely error in the Sentencing Guidelines context ... was judicial versus jury fact-finding of sentencing enhancements and is entirely different from the error we now know to exist under Booker as to the Sentencing Guidelines.” United States v. Shelton, 400 F.3d 1325, 1333 n. 12 (11th Cir.2005) (emphasis added).
*1297 Finally, Judge Carnes argues that most mitigating evidence or argument a defendant might present under the post-Booker sentencing model should already be in the record because it was arguably relevant (pre-Booker) to determining the defendant’s sentence within his guideline-mandated range. See ante, at 1968 - 70. This may be the case with respect to some types of mitigating evidence, but it ignores reality to suggest that it is true across the board. For example, although it was theoretically possible under the old model for a defendant to seek a sentence at the low end of a mandatory guideline range by presenting statistical evidence that the Sentencing Commission had overestimated the need for general deterrence with respect to his offense in his particular community, I personally never heard of such an argument being made. Now, however, such Sentencing Commission policy judgments are open to attack in any given case.
In sum, my opinion is not nearly so novel as Judge Carnes suggests, it does not depend on any monumental inferential leap, and it is entirely consistent with the Supreme Court’s opinion in Booker. The distinction I draw between constitutional and statutory Booker errors has ample support in law and logic; in fact, it is not even unprecedented in this circuit. Finally, Judge Carnes’s opinion is grounded in large part on the faulty assumptions that Apprendi error and Booker error are essentially the same and that Booker really won’t do that much to change the type of the evidence and argument presented at federal sentencing hearings.
V.
I tend to agree with the panel in this case that we cannot automatically equate prejudice with the imposition of extra-verdict sentencing enhancements, since these same enhancements must be considered under the new model.[19] I completely agree with the panel that we cannot know *1298 what effect Booker error had on Rodriguez’s sentence. I take a different lesson from this uncertainty, though. Because its effects “are necessarily unquantifiable and indeterminate,” Sullivan, 508 U.S. at 281-82, 113 S.Ct. at 2083, and because Booker dramatically “affect[s] the framework within which [sentencing] proceeds,” Fulminante, 499 U.S. at 310, 111 S.Ct. at 1265, Booker error is structural in nature. Moreover, treating Booker constitutional error as structural error would give effect to the distinction Booker draws between constitutional and statutory error. See 125 S.Ct. at 769.
The panel errs by accepting Booker’s invitation to “apply ordinary prudential doctrines” without following its implicit instruction as to how they should be applied. Id. As a result, it erroneously requires Rodriguez to prove an effect on his “substantial rights.” This an important issue because the panel’s opinion imposes a virtually impossible burden on a large class of defendants whose cases are still in the pipeline on direct appeal. Our rule will “condemn some unknown fraction of criminal defendants to serve an illegal sentence.” Paladino, 401 F.3d at 484. The panel does not deny that this is the case. It concedes that it has no way of knowing whether Rodriguez is serving an illegal sentence. Rodriguez, 398 F.3d at 1301. At a minimum, we know that his sentence was imposed in an unconstitutional manner. Nevertheless, the panel refuses to grant a new sentencing hearing. For the foregoing reasons, I dissent from the denial of rehearing en banc.

. This "very limited class" includes (1) a total deprivation of the right to counsel, (2) the lack of an impartial trial judge, (3) the unlawful exclusion of grand jurors of the defendant's race, (4) the denial of the right to self-representation at trial, (5) the denial of the right to a public trial, and (6) an erroneous reasonable-doubt instruction. Johnson, 520 U.S. at 468-69, 117 S.Ct. at 1549-50.

. In contrast, the Court has described ordinary "trial error” as "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.” Fulminante, 499 U.S. at 307-08, 111 S.Ct. at 1264.

. See infra note 13.

. The First and Fifth Circuits have committed the same error. See United States v. Antonakopoulos, 399 F.3d 68, 77-80 (1st Cir.2005); United States v. Mares, 402 F.3d 511, 520-22, 2005 WL 503715, at *8-9 (5th Cir.2005).

. In the same paragraph, the Court also emphasized that "not ... every sentence gives rise to a Sixth Amendment violation.” Booker, 125 S.Ct. at 769.

. This question whether non-constitutional errors can ever be structural errors has engendered much disagreement within several other circuits. Compare United States v. Curbelo, 343 F.3d 273, 280 n. 6 (4th Cir.2003) ("Despite occasionally suggesting in dicta that structural errors must implicate constitutional rights, the Supreme Court has clearly held that structural errors need not be of constitutional dimension.” (citation omitted)), with id. at 289 (Wilkins, C.J., dissenting) ("The Supreme Court and this court have repeatedly made clear that structural errors necessarily must affect a defendant's constitutional rights.”). Compare Green v. United States, 262 F.3d 715, 717-19 (8th Cir.2001) (holding that the denial of a federal prisoner’s statutory right to counsel in collateral proceedings is structural and therefore not subject to harmless-error analysis), with id. at 719 (Bye, J., dissenting) ("Structural errors appear to be confined to the constitutional sphere because Congress has mandated the application of harmless error review by statute. Presumably, only grave constitutional errors could surmount the statutory default rule that harmless error analysis applies.” (citation omitted)). Compare United States v. Annigoni, 96 F.3d 1132, 1144 (9th Cir.1996) ("Although we conclude that the erroneous denial of the right of peremptory challenge is not amenable to harmless-error analysis, we need not decide whether such error rises to the level of structural error. The error in this case — the erroneous denial of a right of peremptory challenge — is simply not amenable to harmless-error analysis.”), with id. at 1150 (Kozin-ski, J., dissenting) ("The right to a certain number of peremptory strikes — or to any at all — is not guaranteed by the Constitution ..... Since the Court has allowed for the 'possibility of harmless error even when important constitutional rights are violated, I find it hard to believe the Court would now conclude that it's always reversible error to deny a defendant a mere statutory right.” (citations omitted)). In Sanchez, we appear to have answered this question in the negative. But see McGriff v. Dep’t of Corr., 338 F.3d 1231, 1235 (11th Cir.2003) (holding that failure to appoint counsel as required by the rules governing proceedings under 28 U.S.C. § 2254 is "structural error”); Shepherd v. United States, 253 F.3d 585, 588 (11th Cir.2001) (holding that failure to appoint counsel as required by the rules governing proceedings under 28 U.S.C. § 2255 "is not subject to harmless error analysis”). In any event, we would not need to address this broad issue to decide this case. It would be enough to say that Booker constitutional error is structural, but Booker statutory error is not.

. See, e.g., Neder v. United States, 527 U.S. 1, 7, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) ("Although [the harmless-error rule] by its terms applies to all errors ..., we have recognized a limited class of fundamental constitutional errors that 'defy analysis by "harmless error” standards.' ” (emphasis added) (quoting Fulminante, 499 U.S. at 309, 111 S.Ct. at 1265)); id. at 14, 119 S.Ct. at 1836 ("Under our cases, a constitutional error is either structural or it is not.” (emphasis added)); Sullivan, 508 U.S. at 282, 113 S.Ct. at 2083 (Rehnquist, C.J., concurring) ("In [Fulminante], we divided the class of constitutional violations that may occur during the course of a criminal proceeding, be it at trial or sentencing, into two categories: [trial errors and structural errors].” (emphasis added)); Brecht v. Abrahamson, 507 U.S. 619, 629-30, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993) (discussing trial error and structural error as part of the "spectrum of constitutional errors”); Fulminante, 499 U.S. at 310, 111 S.Ct. at 1265 (''Since our decision in Chapman, other cases have added to the category of constitutional errors which are not subject to harmless error .... Each of these constitutional deprivations is a similar structural defect ...." (émphasis added)); Chapman, 386 U.S. at 23, 87 S.Ct. at 827-28 ("Although our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, this statement ... itself belies any belief that all trial errors which violate the Constitution automatically call for reversal.” (emphasis added and footnote omitted)).

. Professor Stith and Judge Cabranes further observe that "with respect to commonly occurring circumstances that are not explicitly addressed by the Guidelines,” courts generally "assume! ] that the Commission has already taken the matter into account.” Stith & Cabranes, supra, at 102. That is, if the circumstance is not rare, the Commission must be aware of it and therefore its omission must mean that the Commission does not think it significant to sentencing policy. Thus, "[t]he real question is not whether the Commission actually took some factor into account,' but whether the factor is rare enough to overcome a presumption that the Commission has taken it into account.” Id. at 102-03 (citing Koon, 518 U.S. at 110-11, 116 S.Ct. at 2052).

. See, e.g., United States v. Davis, 98 F.3d 141, 145 (4th Cir.1996) ("Davis argues that a sentence of less than the 30 years ... would provide just punishment .... Davis’ claim ... that less than 30 years would be sufficient is misplaced. The commentary to the sentencing guidelines states: 'dissatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range.' ” (citation omitted)); United States v. Frazier, 979 F.2d 1227, 1231 (7th Cir.1992) (“[District courts may not] depart based on their perception of a lack of a need for general deterrence. 'It would be difficult to imagine a finding that the Sentencing Commission failed to adequately consider the general deterrent effect of the criminal law .... District courts must justify their departures by reference to factors particular to the defendant that the Guidelines inadequately considered.' [United States v. Thomas, 906 F.2d 323, 327 (7th Cir.1990)] (emphasis added).”).

.See, e.g., United States v. Jaber, 362 F.Supp.2d 365, 368-76, 380-82, 2005 WL 605787, at *3-9, 13-15 (D.Mass. March 16, 2005); United States v. Carvajal, 2005 WL 476125, at *5-6 (S.D.N.Y. Feb.22, 2005); United States v. Biheiri, 356 F.Supp.2d 589, 594 n. 6 (E.D.Va.2005) ("No individual [§ 3553(a)] factor is singled out-as having greater weight; instead, the richness of factual diversity in cases calls on senténcing judges to -consider all of the factors and to accord each factor the weight it deserves, under the circumstances. Thus, the Guidelines sentencing range is not entitled to 'heavy weight,’ but *1288 it is a useful starting point in fashioning a just and appropriate sentence.”); United States v. Nellum, 2005 WL 300073, at *4 (N.D.Ind. Feb.3, 2005) ("The defendant is also an Army veteran, who was honorably discharged. Under the guidelines, ... military service is not ordinarily relevant in arriving at an appropriate sentence. Yet, this Court finds it very relevant that a defendant honorably served his country when considering his history and characteristics. See § 3553(a)(1).” (citation omitted)); United States v. Galvez-Barrios, 355 F.Supp.2d 958 (E.D.Wis.2005); United States v. Huerta-Rodriguez, 355 F.Supp.2d 1019, 1025-28, 1029-30 (D.Neb.2005); United States v. Myers, 353 F.Supp.2d 1026, 1027-32 (S.D.Iowa 2005); United States v. Jones, 352 F.Supp.2d 22, 25-26 (D.Me.2005); United States v. Ranum, 353 F.Supp.2d 984, 987 (E.D.Wis.2005) ("The guidelines are not binding, and courts need not justify a sentence outside of them by citing factors that take the case outside the 'heartland.' Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors.”).

. Courts may be particularly likely to disagree with guideline ranges deriving from base offense levels tied to drug quantities or dollar amounts, which have long been the subject of criticism. Post -Booker, several district courts have already indicated as much. For example, one district court has announced,
[T]he Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices. Based on those statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. Accordingly, in many cases, the Guidelines represent a reasonable estimation of a fair sentencing range.
However, for policy reasons and because statutory mandatory minima dictated many terms of the drug-trafficking guidelines, the Commission departed from past practices in setting offense levels for such crimes as fraud and drug trafficking. Consequently, and based also on its own experience and familiarity with state court sentencing, the court finds Guideline ranges of imprisonment for those crimes are less reliable appraisals of fair sentences.
The Guidelines' quantity-driven, "market-oriented” approach also contributes to disparity and unreliability in drug sentencing. The quantity system was developed to punish bigger distributors more harshly, but practices of charging conspiracies over a long period of time has the result of aggregating many small distributions so as to make a long-term small quantity distributor look like a large-quantity distributor. For example, a distributor responsible for selling one gram at a time a hundred times gets the same sentence as the dealer caught selling 100 grams only once.
Huerta-Rodriguez, 355 F.Supp.2d at 1025-26 & n. 6 (citations omitted). Similarly, another district judge has observed,
[I]t is worth pointing out that under the guidelines, the weight of the narcotics is the driving force behind the sentence. The government is well aware that for every controlled buy that is made, the quantity of drugs is increased, and so is the sentence. There is a randomness to this in the following sense: [the defendant’s] guideline range would have been significantly decreased if he was arrested after the first [undercover] buy ... and not after the fourth buy. Under the guidelines, this fortuity increased [his] guidelines range from 87-108 months ... to 168-210 months. Indeed, on the other hand, if the officers wanted to, they probably could have made additional controlled buys from [the defendant] and the total weight of the drugs attributable to him would have been even higher and so too his sentence under the guidelines. It is ... difficult to ignore the random nature of how the system plays out in reality.
Nellum, 2005 WL 300073, at *5; see also Jaber, 362 F.Supp.2d at 379, 2005 WL *1289 605787, at *12 ("Drug quantity may well be a kind of accident, depending on the fortuities of law enforcement or even the market, as much as it reflects the defendant's culpability.”). The district judge in Nellum also noted that the guideline sentencing disparity between crack cocaine and powder cocaine was likely to be a controversial and recurring issue in sentencing hearings conducted under the new model, although he concluded that he could impose an appropriate sentence without addressing it directly in that case. Nellum, 2005 WL 300073, at *4; cf. United States v. Wilson, 350 F.Supp.2d 910, 918 (D.Utah 2005) (arguing that the Guidelines generally reflect public opinion, with one notable exception being "the Guidelines' differentially harsh treatment of distribution of crack cocaine (as compared to powder cocaine)''). Recently, in United States v. Smith, 359 F.Supp.2d 771 (E.D.Wis.2005), another district court imposed a lower sentence than that called for by the Guidelines to avoid an "unwarranted disparity between defendants convicted of possessing powder cocaine and defendants convicted of possessing crack cocaine.” Id. at 781.

. See, e.g., United States v. Lacy, 99 F.Supp.2d 108, 112 (D.Mass.2000) (footnotes omitted):
[W]hile the Guidelines' emphasis on quantity and criminal history drives these high sentences, sadly, other factors, which I believe bear directly on culpability, hardly count at all: Profound drug addiction, sometimes dating from extremely young ages, the fact that the offender was subject to serious child abuse, or abandoned by one parent or the other, little or no education. Nor may I consider the fact that the disarray so clear in the lives of many of these defendants appears to be repeating itself in the next generation: Many have had children at a young age, and repeat the volatile relationships with their girlfriends that their parents may have had. And I surely cannot evaluate the extent to which lengthy incarceration will exacerbate the problem, separating the defendant from whatever family relationships he may have, or the impact on communities when these young men return.

. Alternatively, if "the district court during senténcing expressed several times its view that the sentence required by the Guidelines was too severe,” stated that it was "unfortunate[]” that the Guidelines overstated the seriousness of the defendant's criminal history, imposed the lowest possible sentence under the Guidelines, and remarked that even that sentence was "more than appropriate,” then the defendant will satisfy the Rodriguez standard. United States v. Shelton, 400 F.3d 1325, 1331-33 (11th Cir.2005). Shelton involved only statutory error, so I agree with the panel that a prejudice inquiry was necessary. I also agree that the defendant established prejudice. Indeed, I do not understand why the court felt the need to emphasize that “[a]ll of these comments taken together con-vincefd] [it] that there [was] a reasonable probability the district court would have imposed a lesser sentence ... if it had not felt bound by the Guidelines.” Id. at 1332-33. I should think that any one of these circumstances standing alone would be sufficient.

. Rodriguez did, however, object to the district court's calculation of the number of ecstasy tablets involved in the offense. The Eighth Circuit "has held that when a defendant objects to a District Court's determination of drug quantity at sentencing, the defendant preserves a Booker-based challenge to his sentence and is entitled to a new sentencing proceeding.” United States v. Sdoulam, 398 F.3d 981, 995 (8th Cir.2005).

. Judge Carnes says that my approach to the plain-error test will result in all sentences involving constitutional error being vacated. This is so, he says, because "Shelton effectively adds that where the third prong of the plain error test is met in [Booker] cases, the fourth one will be also.” Ante, at 1262 (citing Shelton, 400 F.3d at 1333-34). That is not how I read Shelton. If that case does, in fact, hold that the third and fourth prongs of the test always go hand-in-hand in Booker cases, it certainly does so subtly. The passage Judge Carnes cites states:
A plain error affecting substantial rights does not, without more, satisfy the plain-error test, for otherwise the fourth prong and the discretion afforded by the fourth prong would be illusory. We conclude that the fourth prong is established here and that an exercise of our discretion is warranted in this particular case.
The district court in this case indicated an express desire to impose a sentence lesser than the low end of the Guidelines range of 130 months' imprisonment, and the Supreme Court in Booker plainly indicated that the district court now has the discretion to do so, provided the resulting sentence is reasonable in light of the § 3553(a) factors. Under these circumstances, defendant Shelton has carried his burden to establish the fourth prong and has shown that the plain error that affected his substantial rights also seriously affected the fairness, integrity or public reputation of the judicial proceedings in his particular case. Accordingly, we vacate Shelton’s sentence and remand for resentencing consistent with Booker.
Shelton, 400 F.3d at 1333-34.
I do expect that in most cases the defendant will also satisfy the fourth prong of the plain-error test if he is able to satisfy the third prong. But if, for example, the Government could show that the district court expressed a strong desire to impose a more severe sentence than the Guidelines permitted because of circumstances not easily countered by mitigating evidence, declining to correct the plain error would not lead to a "miscarriage of justice.” Of course, under the panel’s approach, such a defendant would never get past the third prong of the plain-error test anyway. As such, part of the reason Judge Carnes thinks that my approach would mean that all sentences involving constitutional error would satisfy the plain-error test is a direct result of an aspect of the panel opinion with which I disagree and would not follow.
I also note that, addressing statutory error only, the Tenth Circuit recently rejected the proposition for which Judge Carnes reads Shelton to stand:
As a preliminary matter, we note that in the wake of Booker several courts of appeals have collapsed the third and fourth prong analyses. That is to say, if these courts find the third prong satisfied, they conclude that the fourth prong is met as a matter of course. We cannot subscribe to this approach. The Court in Olano clearly held that "a plain error affecting substantial rights does not, without more, satisfy the ... standard, for otherwise the discretion afforded by Rule 52(b) would be illusory.”
Gonzalez-Huerta, 403 F.3d at 735, 2005 WL 807008, at *6 (citation omitted) (quoting Olano, 507 U.S. at 737, 113 S.Ct. at 1779); see *1295 also Gonzalez-Huerta, 403 F.3d at 741 n. 2, 2005 WL 807008, at *12 n. 2 (Ebel, J., concurring) ("I agree with both the majority opinion and with Judge Hartz that we cannot conflate the third and fourth prongs of the plain-error analysis. Rather, we must address these two inquiries separately.”).
Judge Carnes further argues that it would be "difficult to justify a conclusion that an error that is structural does not 'seriously affectf ] the fairness, integrity or public reputation of judicial proceedings,’ ” and that, "[s]o far as can be discovered, no court has ever actually” reached such a conclusion. Ante, at 1266 (quoting Olano, 507 U.S. at 732, 113 S.Ct. at 1776). The Supreme Court, however, has twice concluded that a defendant failed to satisfy the fourth prong of the plain-error test even assuming that the error claimed was both plain and structural. See Cotton, 535 U.S. at 632-34, 122 S.Ct. at 1786-87; Johnson, 520 U.S. at 468-70, 117 S.Ct. at 1549-50. Although the Court did not actually say that the errors it addressed in these cases were structural, it necessarily held that, in general, structural errors do not per se affect the fairness, integrity, or public reputation of judicial proceedings. Otherwise, the Court would have been required to reach the defendants’ structural-error arguments. For the same reason, Cotton and Johnson also necessarily hold that the plain-error test applies to even structural errors, and, so far as I have discovered, no court of appeals has held otherwise. Judge Carnes's opinion is inconsistent with this holding, as he all but says that structural errors are per se reversible even in the plain-error context.

. Moreover, in the same paragraph, the Court also stated, "[W]e must apply today's holdings — both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act' — to all cases on direct review. That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation.” Booker, 125 S.Ct. at 769. The panel’s approach renders the observation that not "every sentence gives rise to a Sixth Amendment violation” superfluous because Rodriguez and progeny treat all Booker errors exactly the same. See ante, at 1262-63 ("Because the effect of Booker error is the same regardless of the type, our decisions make no functional distinction between constitutional and statutory error. For purposes of the plain error rule, unpreserved error is unpre-served error.").

. The Tenth Circuit has also noted the distinction between constitutional and non-constitutional Booker errors. See Gonzalez-Huerta, 403 F.3d at 727, 2005 WL 807008, at *4. It "[held] that non-constitutional Booker error is not structural error,” id. at 734, but did not reach the issue of constitutional Booker error. In concluding, as I do, that non-constitutional (or statutory) Booker error is not structural, it observed that the Supreme Court has implied that "generally speaking structural errors must, at a minimum, be constitutional errors.” Id.; see supra note 7 & accompanying text (collecting cases and observing the same). Later in its opinion, the Tenth Circuit also noted the normative difference between constitutional and statutory Booker errors:
The error of which [the defendant] complains is not the substantive error first recognized in Blakely and which Booker sought to eliminate — namely, that the Sixth Amendment is violated when a judge, rather than a jury, finds facts that mandatorily increase a defendant’s sentence. Rather, the error in [this] case — that the District Court applied the Guidelines mandatorily— is only error insofar as it runs afoul of the Court's remedy for the unconstitutional implications of the Guidelines. This disconnect between the constitutional violation and the remedy makes Booker unique.... The fortuity of the Court's choice to excise 18 U.S.C. § 3553(b)(1), instead of a remedy more directly related to the underlying constitutional problem, is key to our determination that the District Court's erroneous— although not constitutionally erroneous— mandatory application of the Guidelines is not particularly egregious or a miscarriage of justice.
Gonzalez-Huerta, 403 F.3d at 738, 2005 WL 807008, at *8. Although I do not agree with all of the Tenth Circuit's analysis, I do agree that there is an important distinction between constitutional and statutory Booker errors.

. Judge Carnes may be correct that Sanchez’s statement is "pure dicta.” Ante, at 1267 n. 4. As such, I do not suggest that he is "bound” by it. Id. My only surprise is that what this court said — in an en banc opinion that Judge Carnes joined — less than four years ago is today thought so obviously wrongheaded.

. This is essentially the position taken by the Fourth and Sixth Circuits. E.g., United States v. Hughes, 401 F.3d 540, 547-55 (4th Cir.2004); United States v. Oliver, 397 F.3d 369, 379-80 (6th Cir.2005); see also United States v. Ameline, 400 F.3d 646, 654 (9th Cir.2005), vacated and reh’g en banc granted, 401 F.3d 1007 (9th Cir.2005). In practice, this approach reaches the same result as mine in cases involving constitutional error. My disagreement goes only to its reasoning. It is inaccurate to say that a defendant has actually established an effect on his substantial rights if we can only guess as to what sentence he might get under the new sentencing model. In short, these courts require the defendant to show that his substantial rights were affected only to find that they were in every case involving constitutional error, whereas I would simply say that no such showing is required. To the extent that some courts are automatically vacating sentences that involve only statutory error, e.g., United States v. McCraven, 401 F.3d 693, 699-700 (6th Cir.2005), this cannot be correct because it renders meaningless the Supreme Court's instruction that we apply the plain-error test to cases pending on direct review.
The Second, Seventh, and D.C. Circuits have adopted the novel approach of remanding all Booker cases to allow the district court to determine whether the defendant's substantial rights were affected so as to require a new sentencing hearing. See United States v. Coles, 403 F.3d 764, 2005 WL 783069, at *1 (D.C.Cir. Apr.8, 2005); United States v. Crosby, 397 F.3d 103, 117-118 (2d Cir.2005); Paladino, 401 F.3d at 483-85. To the extent that this approach fails to distinguish between constitutional and statutory error, it is inconsistent with the Booker remedial opinion. Moreover, given the significant differences between the old and new sentencing models, "the only way to know whether a different sentence would have been imposed under advisory guidelines” is to actually hold a full hearing. Paladino, 401 F.3d at 488 (Kanne, J., dissenting from the denial of rehearing en banc). If this is what the district court is to do, then this approach is no more efficient than simply remanding for a new hearing, as *1298 I would do in all cases involving constitutional error. If, however, the district court is only going to take a "quick look” on remand, id. at 486 (Ripple, J., dissenting from the denial of rehearing en banc), then it overlooks the fundamental change Booker has wrought in the federal sentencing framework and fails to fully remedy structural constitutional errors. Finally, by remanding even cases involving only statutory error, this approach fails to relieve district courts of any of the burden the limiting final paragraph of the Booker remedial opinion seeks to avoid.